## THE HOME INSURANCE COMPANY OF NEW YORK
### v. BOYD.

[No. 2,243.   Filed January 28, 1898.]

INSURANCE.— *Vacancy of Premises.— Pleading.— Condition Subsequent.*—A provision in a policy of fire insurance that if the premises become vacant the policy shall be void is a condition subsequent and need not be negatived in a complaint on such policy. *pp. 176-179.*

SAME.—*Notice.—Proof of Loss.—Waiver.*—Where an insurance company notified assured that it would not pay a loss for the reason that the premises insured were unoccupied at the time of the fire, such action constituted a waiver of notice and proof of loss required by the policy. *p. 179.*

SAME.—*Vacancy of Premises.*—A condition in a policy of fire insurance that if the premises become vacant, unoccupied, or uninhabited, the policy shall become void, means that if the house insured should

cease to be used as a place of human habitation, or for living purposes, the policy shall become void. *pp. 180, 181.*

INSURANCE.—*Vacancy of Premises.*—Where the occupant of a house had stored his household goods in one room of the house with no intention of returning to the house to eat or sleep, but intended to remove the goods as soon as the owner of the house demanded possession thereof, such house was vacant within the meaning of a clause making the policy void if the premises are or shall become vacant, unoccupied, or uninhabited. *pp. 181-195.*

From the Shelby Circuit Court.   *Reversed.*

*Ephriam Marsh* and *Wm. Ward Cook,* for appellant.

*R. A. Black, J. B. Black* and *E. B. Pugh,* for appellee.

WILEY, J.—Appellee sued appellant upon an insurance policy to recover for loss sustained by fire.   The complaint avers that on October 31, 1894, appellee was the owner of a certain frame dwelling house in Hancock county, Indiana, and on November 5, 1894, appellant issued to him its policy of insurance thereon, insuring him against loss by fire from October 31, 1894, noon, to October 31, 1897, noon, in the sum of $1,000.00; that the premium thereon was $10.00, which was paid; that on December 1, 1894, said house was totally destroyed by fire, without fault or negligence of appellee, and that he continued as the owner of said property from said 31st day of October, 1894, up to and including the date of said fire.

The complaint avers that said building was situated in the city of Greenfield, in said county, and that one Elmer E. Stoner was and still is the general agent and adjuster of appellant, and that immediately after said fire, said Stoner had full knowledge of the destruction of said building by fire and of said loss, and that within five days of said fire, said Stoner, acting for appellant, notified appellee that appellant would not pay said loss, on the sole ground that said house was not occupied at the time it was so destroyed, and

that thereby appellant waived notice of loss and proof thereof as required by said policy; that said property was of the value of $1,200.00; that no part of said loss has been paid and that the same is due.    The complaint further avers that appellee has performed all the conditions of said policy on his part, and a copy of the policy is filed with the complaint as an exhibit.

Appellant demurred to the complaint, which was overruled, and it excepted.    Thereupon it answered in five paragraphs.    (1)    General denial; (2)    that at the time of the fire the house was vacant; (3)    that at the time of the fire the house was unoccupied; (4)    that at the time the house was uninhabited; (5)    that when appellee applied for said insurance, he represented in his application that he held title to said property by warranty deed, when in fact his only title was by sheriff's deed, and that by the terms of said policy and application, said representations became warranties, binding plaintiff upon said contract, upon which representations appellant had a right to and did rely, and upon which it issued said policy.

To the second, third, fourth, and fifth paragraphs of answer appellee demurred, which demurrer was overruled as to the second, third, and fourth, and sustained as to the fifth paragraph, to which latter ruling appellant excepted.    Appellant replied to the second, third, and fourth paragraphs of answer by general denial, trial by jury, special verdict and judgment in favor of appellee for $1,000.00.    Appellant's motions for a *venire de novo*, judgment in its favor on the special verdict, and for a new trial, were each unavailing, and to the adverse rulings thereon, appellant reserved exceptions.

There are seven specifications in appellant's assignment of errors as follows:    (1)    That the complaint does not state facts sufficient to constitute a cause

of action; (2) the court erred in overruling the demurrer to the complaint; (3) the court erred in sustaining appellee's demurrer to the 5th paragraph of answer; (4) the court erred in overruling appellant's motion for a *venire de novo;* (5) the court erred in sustaining appellee's motion for judgment on the special verdict; (6) the court erred in overruling appellant's motion for judgment on the special verdict; (7) the court erred in overruling appellant's motion for a new trial. The first and second specifications of the assignment of errors may be considered together, as they both present the same question. It is first contended by appellant that the complaint is bad because of the absence of any averment that the house was occupied at the time of the fire. The policy, a copy of which accompanies the complaint as an exhibit, contains the following provisions: "If the risk be increased in any manner    *    *    *·  or if the premises are now vacant, unoccupied or uninhabited, or shall become vacant, unoccupied or uninhabited, without written consent hereon, etc.,    *    *    *  then    *    *    *  this policy shall become null and void." In support of its contention that the complaint should negative these provisions appellant relies on *Aetna Ins. Co.* v. *Black,* 80 Ind. 513. The language of the learned judge, who wrote the opinion in that case, would seem to sustain the proposition. Franklin, C., said: "According to the terms of the policy, which is made a part of the answer and copied in the record, if the premises should cease to be occupied the policy would cease to be valid. This made it necessary to aver in the complaint that the house was occupied to the time of the burning." The complaint in that case also averred that the insured had complied with all the terms of the policy on his part; but the suit was brought by an assignee of the policy, and there was no such averment

The Home Insurance Company of New York *v.* Boyd.

on the part of the assignee. We must regard the provisions in the policy as to vacancy, etc., as conditions subsequent and not conditions precedent. In the complaint before us, appellee avers that he performed all the conditions of said policy, on his part, and such allegation must be construed to mean that he performed all conditions precedent. Mr. May in his work on insurance, says, that the plaintiff need not aver performance or non-performance of conditions subsequent, nor negative prohibited acts, or allege that he is within the excepted risks. May Ins., sections 589 and 590.

In *Germania Fire Ins. Co.* v. *Deckard*, 3 Ind. App. 361, it is held that the averment that appellee performed all the conditions in the policy, on his part, was intended to apply to and qualify the conduct of the insured to the time of the action and must be so construed. In *Phenix Ins. Co.* v. *Pickel*, 119 Ind. 156, the court said: "Where a policy of insurance contains conditions and warranties like those contained in this policy, it is sufficient for the plaintiff to show fulfillment of the conditions of recovery which are made such by the contract itself. The burden is then upon the defendant to set forth and prove the untruthfulness of the representations, if there are any such, upon which he relies. The plaintiff need not aver the truth of statements contained in the application, nor the performance or non-performance of conditions subsequent, nor negative prohibited acts." See May Insurance, sections 183 and 590. *Northwestern, etc., Life Ins. Co.* v. *Hazelett*, 105 Ind. 212, 56 Am. Rep. 192.

In the case from which we have just quoted it was contended that as the policy provided against the property becoming vacant, etc., that to make the complaint good it was necessary to allege that it was not

vacant when destroyed by fire. It was held that such allegation was not necessary, as the complaint averred a general performance of conditions, and that the plaintiff was without fault.

In the case of *Phenix Ins. Co.* v. *Golden*, 121 Ind. 524, the policy sued upon was conditioned that if the property insured should become vacant or unoccupied without written consent indorsed on the policy, it should become null and void. The complaint did not aver that the property insured was occupied at the time of its destruction but did aver that the insured, had upon his part performed each and every act which by the terms of the policy he was required to do. The court said: "It is contended by counsel for appellant that the complaint is defective, for the reason that it does not specifically aver that the property was not allowed to become vacant, and that it was occupied at the time it was burned. If this is a condition precedent, which it was necessary for the plaintiff to aver the performance of to entitle him to a recovery, the general averment in the complaint is sufficient. Section 370 R. S. 1881. But it may well be questioned whether or not, in the absence of a general averment, this is not a matter of defense, which must be pleaded by the defendant if a vacancy occurred, which would defeat a recovery." The complaint was held good. See also *American Ins. Co.* v. *Leonard*, 80 Ind. 272; *Indiana Ins. Co.* v. *Capehart*, 108 Ind. 270; *Commercial Union Assurance Co.* v. *State, ex rel.*, 113 Ind. 331.

These cases seem to settle the question under discussion in favor of appellee. If the condition of the policy providing against vacancy is a condition precedent, which we are of the opinion it is not, appellant's contention is answered by section 370, Horner's R. S.

The Home Insurance Company of New York v. Boyd.

1897, which provides that in pleading the performance of a condition precedent in a contract, it shall be sufficient to allege generally, that the party performed all the conditions on his part; and if such condition is one subsequent, an averment of performance was not necessary. See authorities above cited. The complaint was not bad for a failure to aver that the property was not vacant or unoccupied.

It is next contended by appellant that the complaint is defective, in regard to the averments as to waiver of proof of loss. The policy provided that in case of loss appellee was to give appellant notice, in fifteen days at its western office in Chicago, and within sixty days, to render to said office under oath a particular and detailed statement and proofs of loss, etc., and that an appraisement thereof should be made. The complaint avers that one Elmer E. Stoner was the general agent of appellant, residing in Greenfield where said property was situated, and that immediately after said fire, he had actual knowledge of the destruction of said building, and that within five days thereafter, said Stoner acting for said company notified appellee that appellant would not pay the said loss, on the sole ground that the said house was not occupied at the time it was burned, and thereby waived notice of said loss and proof thereof as required by the policy. The facts here pleaded, are sufficient to show a waiver of notice and proof of loss. There are many cases so holding, the most recent one being the *Western Assurance Co.* v. *McCarty*, 18 Ind. App. 449.

In that case Comstock, J., collected many authorities, and we content ourselves by citing it as controlling here. See, also, *Phoenix Ins. Co.* v. *Searles* (Ga.), 27 S. E. 779. In a recent case in Illinois, it was held that notice and proof of loss were waived, where the

insurance company declined to pay a loss, on the ground that the policy was void when issued. *Lumbermens' Mutual Ins. Co.* v. *Bell*, 166 Ill. 400, 57 Am. St. 140, 45 N. E. 130.

In the case before us, as averred in the complaint, appellant refused to pay the loss, on the ground that the property was vacant or unoccupied, when it burned, and so notified appellee by its agent.

The law does not impose unnecessary or useless burdens on any one, and when this information came to appellee, the law imposed no further duty upon him in the way of giving notice and making proof of loss. He was then at liberty to bring his action and recover for his loss, if the law and facts would entitle him to relief. The complaint stated a good cause of action, and there was no error in overruling the demurrer to it.

The controlling question, it seems to us, is raised by the sixth specification in the assignment of errors, viz: that the court erred in overruling appellant's motion for judgment on the special verdict. The rule is so well established in this State, that it is almost axiomatic, that to entitle a party having the burden of proof to a judgment in his favor on a special verdict, such verdict must find and state every essential fact necessary to a recovery.

It is well settled that insurance companies may contract against increased risks, in the way of insured property becoming vacant, change of business, etc. Appellee accepted the policy in suit, with the condition in it, exempting appellant from liability, in case the property insured should become "vacant, unoccupied or uninhabited." These words, used in the sense and connection they are, in the policy, must be construed to mean, that if the house insured should cease to be used as a place of human habitation or for

The Home Insurance Company of New York *v.* Boyd.

living purposes, the policy should be null and void.
When the conclusions stated are eliminated from the
verdict, it shows that the house was "vacant, unoccu-
pied, and uninhabited," within the meaning of the
policy, and hence insufficient to support a judgment.
That the question may be fully and fairly presented,
we deem it proper to state briefly, the evidence as to
whether or not the house was vacant, etc., and then
the facts as found by the jury.   The evidence shows
that one Benjamin H. Cox built the house in 1891;
that he executed to appellee a mortgage upon it, in
which his wife joined; that the mortgage was fore-
closed, property sold, equity of redemption expired,
and a sheriff's deed made to appellee.   Cox's wife
died in 1892.   After her death, he and a son continued
to live in the house for some time.   In April, 1894,
Cox rented a part of the house to one Pierson, who
occupied it with his family, and used some of his furni-
ture until about a week before it burned, when they
moved to Indianapolis.   He also rented a part of the
house to one Griggsby, but he moved out about two
months before Pierson.   Before Pierson moved, Cox
gathered all of his household furniture together, and
put or stored it in the west kitchen; took up his car-
pets; took down his pictures, window curtains, bed-
steads, and stove, and put all of them in the west
kitchen.   Cox had a daughter living next door to the
house that was burned, and after he rented the house
he took his meals with her.   He also spent part of his
time at another daughter's, at Indianapolis.   In an
answer to a question Cox said: "I took the furniture
and moved it in the west kitchen.   You see I rented
him (Pierson) the house with the furniture and I
wanted to go away, and I wanted to put my furniture
all together, and I took it and stored it in there.   I
stored or throwed it in the kitchen and locked it up,

* * * and then went away." The evidence then shows he went to Indianapolis. He returned, however, before the fire, and on the day preceding the fire he went to the house and "blacked" his boots, and on the same evening went back to Indianapolis. He further testified: "I made my home mostly with Mr. Tague (his son-in-law), took my meals there; took some of my property to Tague's for my own use. * * * After I returned from Indianapolis, I would go to the house, and stay some times for an hour or such a matter." His evidence further showed that he did not have a cook-stove in the house; that he took his wearing apparel to Tague's in the spring of 1894; never took or intended to take it back to the house; that he never slept in the house after October 31, 1894, and never had any intention of sleeping there after that time; that he never ate there after that and had no intention of doing so. The following questions and answers we quote in full: "I will ask you if after that time, you ever intended to occupy that house for living purposes yourself?

"I didn't expect to, because I wasn't able to maintain it.

"Didn't you intend, at the time you stored those goods in that kitchen, to remove them to some other place?.

"Why, I expected to remove them, certainly I did; I expected to, but what time, I did not know. I had a place where I could move them, was going to move them to the ice house belonging to the creamery." His evidence further showed that he took a dining table to his son-in-law's, and they ate off of it; that he also took a lounge there to sleep on, and that he had not had a fire in the house destroyed, for nearly a year before it was burned. When the house was occupied by Pierson it was heated by natural gas, and

after he left, the gas was turned off.  As to the packing and storing of Cox's goods in the kitchen, all the facts relating thereto as testified to by him were corroborated by Pierson and his wife.  In fact there is no evidence contradicting these statements.  And as to the occupancy of the house by Pierson and Griggsby and their removal therefrom, there is no controversy.

Turning now to the special verdict, we find upon the question as to whether or not the house was vacant, etc., the following interrogatories and answers: "28. Was not Mr. Cox in possession of the premises insured, at the date the house was destroyed by fire? * * * Yes.

"29. Did Mr. Cox at any time surrender the possession of the house to Mr. Boyd or to any other person prior to the date of the fire? ⋅ No.

"30. Did not Mr. Cox have his household goods in the premises * * * continuously from the date of the issuance of the policy until the date of destruction by fire?  Yes.

"32.  Had Mr. Cox at any time removed his household goods from the premises * * * prior to the date of the fire?  No.

"34.  Did not Mr. Cox use the premises continuously from the time it was insured until the date of the fire?  Yes.

"35. Had Mr. Cox at any time prior to the date of the alleged destruction of the premises insured, by fire, changed his residence from said premises to any other place?  No.

"37. Was the house mentioned in the policy sued on vacant at the time of the * * * fire?  No.

"38. Was the insured premises occupied at the date of the fire?  Yes.

"39. Was the insured premises inhabited at the

date of the fire? Yes. The jury found that Pierson and his wife moved out of the house November 24, 1894, and all that part formerly occupied by them was vacant; that the house was piped for natural gas, and after they moved out, it was turned off.

"64. Did Benjamin H. Cox, with intent to vacate the building a few days before Henry J. Pierson and wife vacated the east side of the building insured, and occupied by them, remove his household goods and personal effects from the up-stairs rooms occupied by him, and also the down stairs rooms, and pack them in the kitchen of the west side of the building preparatory for their removal to another place already selected by said Cox? No.

"65. Did Benjamin H. Cox occupy the building insured except for the purpose of storing his household goods in the west kitchen, after Henry J. Pierson and wife vacated the east side of the building? Yes.

"66. If after Henry J. Pierson and wife had vacated the building insured, and after Benjamin H. Cox had packed and stored his household goods in the west kitchen room, what if anything remained in the rooms vacated * * * in the way of personal property, or that could be used and occupied for living purposes? Nothing.

"68. Was the personal property of said Cox in said west kitchen * * * in such condition that before the same could be used again for domestic and living purposes, it would have to be unpacked and replaced in and about the rooms * * * for domestic and living purposes? They were not."

The jury further found that when Cox so stored his goods in the kitchen, he intended to remove them, when appellee demanded possession of the premises; that he did not intend to remove them to some other

place for the purpose of unpacking and using them for living or other domestic purposes; that he did not intend to remove them to some other place for storing them; that said Cox did not intend to sleep in the building after he had packed his goods; that the goods were placed near the center of the kitchen; that the bedstead was taken apart and leaned against the wall; the bed-clothing packed in boxes; the dishes in tubs; the carpets piled in rolls; the stove disconnected and setting apart from its base; the window curtains removed from the windows and lying near the carpets; the folding lounge closed with carpets and other effects piled on it; that all of said goods were ready for immediate removal, and remained in that condition to the time of the fire.    The verdict further finds that Cox did not have any family; that he did not lodge in the building.

"83. After Benjamin H. Cox packed and stored his goods, did he ever afterwards use the building for ordinary living purposes?  Yes."  It is further found that prior to Cox storing his goods in the kitchen he removed his wearing apparel therefrom to Tague's, his son-in-law, and he did not intend to take it back to said building.  "88. Does the policy of insurance sued upon expressly provide that if the premises insured are or shall become vacant, unoccupied, or uninhabited without the written consent of the defendant endorsed thereon, the policy shall become null and void?  Yes.   92.   Where was Benjamin H. Cox at the time the building was destroyed by fire?  Indianapolis."  The verdict found that the building was burned November 30, or December 1, 1894.   These are all the facts stated in the verdict that are necessary to set out in this opinion.   From these facts it clearly appears that the house covered by the policy of insurance sued upon, was within the meaning of

the language of the policy, and in law, "vacant, unoccupied and uninhabited," at the time of the fire, and had been ever since Pierson and his family moved out. on or about November 24, 1894.

The facts that Cox had stored and locked in one of the rooms, most of his household goods; that he had a key opening into said room; that he went there once to black his boots, and then left for Indianapolis; that he went there occasionally to look after his goods; that he had not surrendered the possession of the property to appellee; that after so storing his goods he did not intend to return to the house to eat or sleep, and that he intended to remove them as soon as appellant demanded possession of the house, did not constitute him an occupant or inhabitant of the house within the meaning of the law, or the words, in that connection, used in the policy. The fact that the jury found that the house was not vacant and was inhabited and occupied, can add no force to the verdict, for such findings must be regarded as conclusions of law, and not findings of ultimate facts. There was no time as shown by the evidence or the verdict, that the house was used as a place of habitation, or for "ordinary living purposes," after Pierson moved out of it, up to the time it was burned. No one ate or slept there, and it is evident that no one lived there. In view of the uncontradicted evidence in this case, we are unable to understand how the jury in answer to interrogatory eighty-three, above quoted, found that after Cox packed and stored his goods in the kitchen, he used the building "for ordinary living purposes." The conception the jury had of the expression "ordinary living purposes," as used by them, is beyond our interpretation or understanding. If for a person to go into a dwelling house, where all of his household effects are stored in one room, so that they may be conveniently removed

at any time, to black his boots, or to crack some hickory nuts, or to look after his goods, as is here shown, both by the verdict and the evidence, and where it further shows that he both ate and slept at another place; that he kept his wearing apparel where he ate and slept, and did not intend to return to such house to live, constitutes using such house for "ordinary living purposes," we must confess that we have never understood the ordinary purposes for which dwelling houses are used.   As we have heretofore understood, a dwelling house is used to live in; as a place of abode; a domicile; where persons or a family cook, eat, and sleep.   Such a flagrant disregard of the plain uncontradicted evidence, and such an unwarranted forgetfulness of a sworn duty, is seldom manifested, as appears from the answer of the jury to the interrogatory to which we have just referred.   And there are other interrogatories answered with the same disregard of the evidence, but it is unnecessary to further refer to them.   We have already said that the verdict clearly shows,—disregarding the conclusions,—that the building was "vacant, unoccupied, and uninhabited," within the meaning of the policy and the law, and we might add, within the intention of the parties to the contract of insurance.   We are not without abundant authority in support of this proposition, and we will now refer to some of the more important cases so holding.  In *Schuermann* v. *Dwelling House Ins. Co.*, 161 Ill. 437, 52 Am. St. 377, 43 N. E. 1093, it was held that where a policy of fire insurance provides that it shall be void "if the building herein described, * * * be or become vacant or unoccupied or not in use," such vacancy, etc., avoids the policy, and that the forfeiture and avoidance do not depend on the assured's knowledge of the fact of vacancy.   In *Agricultural Ins. Co.* v. *Hamilton*, 82 Md. 88, 51 Am. St.

457, 30 L. R. A. 633, 33 Atl. 429, it was held that a dwelling house in which the insured lived at the time of the policy thereon was issued, on the removal of his family therefrom to a house near by, such former house "becomes vacant and unoccupied," within the meaning of such words in the policy, avoiding it in such event, though the house is still slept in occasionally by the employes of the insured, and visited by his wife daily for the purpose of getting therefrom provisions stored therein.   In Mississippi it was held in a recent case, that where the owners of a house which was their residence, had been away on a hunting trip for some days, and it was burned, it avoided the policy, though in the mean time the husband returned to look after it every day or so, and left it in charge of a servant who lived 200 or 300 yards distant, but slept in the house every night, except the one on which it was burned.   In that case the policy provided that it should be void if the house should remain vacant for more than ten days, etc.    *Lester* v. *Miss. Home Ins. Co.*, (Miss.) 19 South. 99.

We think this case goes to extreme length, but we cite it to show, how stringent the rule is, and with what rigor it is enforced by the courts.  In New York, a tenant occupying a dwelling house placed all her furniture in one of the rooms and went on a visit for six weeks, with the intention to occupy the house on her return.   The furniture, etc., was placed in this one room in order that the other rooms might be papered and painted during her absence.   She left a key with a friend, with directions to visit the house daily, to see that the doors were locked, the window shutters closed, etc.   The furniture and household goods were insured, while contained in the building, "occupied and to be occupied as a dwelling house," and the policy provided that it should be void if the building

should become "vacant or unoccupied and so remain for ten days." Upon these facts it was held that the building was "vacant and unoccupied" within the meaning of the policy. *Huber* v. *Manchester Fire Assurance Co.*, 36 N. Y. Supp. 873, 92 Hun. 223. In Pennsylvania it was held that where a tenant of a building abandoned it August 4, and it remained unoccupied until September 11, following, and one of the doors was left unlocked, and could be pushed open from without, a fire policy on the building was void under a condition therein that it should be void if it should become vacant or unoccupied, or if the risk should be increased by any means whatever. *Mooney* v. *Glens Falls Ins. Co.*, 4 Pa. Dist. R. 639.

A very instructive case is *Moore* v. *Phoenix Ins. Co.*, 64 N. H. 140, 10 Am. St. 384, 6 Atl. 27, as to what is meant by the terms "vacant" and "unoccupied." From the authorities and the etymological meaning of the words, we feel fully justified in saying that the words "vacant" and "unoccupied," when used in a policy of insurance in connection with the idea that the insurer was stipulating against an increase in the risk from the absence of persons from the premises insured, must be regarded as interchangeable and equivalent in meaning; that when no one lives in the house it is both vacant and unoccupied, though it may contain articles of furniture which the last occupant failed to remove.

In *Paine* v. *Agricultural Ins. Co.*, 5 (N. Y.) Thomp. & C. 619, it was said: "Occupation of a dwelling house is living in it." The supreme court of Illinois said: "A fair and reasonable construction of the language, 'vacant and unoccupied,' is that it should be without an occupant—without any person living in it." *American Ins. Co.* v. *Padfield*, 78 Ill. 169. In Massachusetts the supreme court, speaking of a dwelling

house and barn, by Colt, J., said: "Occupancy as applied to such buildings implies an actual use as a dwelling place, and such use of the barn as is ordinarily incident to a barn belonging to an occupied house, or something more than a use of it for mere storage. The insurer has a right by the terms of the policy, to the care and supervision which is involved in such an occupancy." *Edward* v. *Builder's, etc., Fire Ins. Co.,* 112 Mass. 422, 17 Am. Rep. 117. In *Sleeper* v. *Insurance Co.,* 56 N. H. 401, the court said: "It is apparent the insurers intended to guard against the increased risk which inevitably affects buildings where no one is living or carrying on any business. An unoccupied building invites a shelter to wanderers and evil disposed persons. No one interested is present to watch or care for the property, or seasonably to extinguish the flames in case of fire; and for various reasons that might be enumerated, an unoccupied building is more exposed to destruction, to say nothing of the inducement a dishonest owner would have to turn it, if unprofitable, into money, when insured, by becoming a party to its destruction by fire. If, then, the motive is to have some one present, occupying and dwelling in the buildings, and interested to preserve the roof that shelters his family or holds his household goods, that object would plainly be defeated by holding that he and his family may depart with all their possessions save perhaps a few articles not needed for present use, and still the premises be considered occupied. * * * I cannot say that I have any doubt that these buildings were vacant at the time they were burned, in the sense in which that term was used in the policy." As to what the terms "vacant" and "unoccupied" mean, when used in a policy of insurance, with reference to a dwelling house, we cite in addition to the above, the following cases:

*North American Fire Ins. Co.* v. *Zaenger*, 63 Ill. 464; *American Ins. Co.* v. *Padfield*, *supra*; *Phoenix Ins. Co.* v. *Tucker*, 92 Ill. 64; *Fitzgerald* v. *Connecticut Fire Ins. Co.*, 64 Wis. 463, 25 N. W. 785; *Cook* v. *Continental Ins. Co.*, 70 Mo. 610; *Herrman* v. *Adriatic Fire Ins. Co.*, 85 N. Y. 162, 39 Am. Rep. 644; *Stupetski* v. *Trans-Atlantic Fire Ins. Co.*, 43 Mich. 373, 38 Am. Rep. 195; *Imperial Fire Ins. Co.* v. *Kiernan*, 83 Ky. 468; *Sonneborn* v. *Insurance Co.*, 44 N. J. L. 220, 43 Am. Rep. 365.

In *Corrigan* v. *Connecticut Fire Ins. Co.*, 122 Mass. 298, it was held that a dwelling house was "vacant and unoccupied," where the former occupant had moved with his family into another house, where they slept and took their meals, though they had left some of their furniture in the house, but had not surrendered the key. *Herrman* v. *Adriatic Fire Ins. Co.*, *supra*, is a very instructive case.

There the insurance company issued to Herman a policy of insurance upon the buildings upon his farm and the furniture in his dwelling. These buildings consisted of a dwelling house used by the insured as a summer residence; buildings appurtenant thereto,—a frame wash and wood house, kitchen and privy, about forty feet in the rear of the dwelling,—a barn and sheds attached; a carriage house; another frame dwelling in which the person in charge of the farm lived. The different items of property were separately stated, with the amount of insurance on each. The policy contained a condition declaring it void in case the premises described should become and remain vacant and unoccupied for more than thirty days, without notice and consent of the company in writing. The insured was living in the dwelling house when the policy was issued; he left

the place in November, leaving the dwelling furnished and in charge of his farmer who occupied the farm house, and members of whose family visited and aired the house once a week; the insured and his wife also visited the dwelling once a fortnight. In April following, the dwelling and some of the out-houses appurtenant thereto were destroyed by fire. Upon these facts it was held by Folger, C. J., speaking for the court, that the dwelling house was not occupied within the meaning of the policy, and that the plaintiff could not recover. The learned judge said: "The fortnightly visits of the plaintiff and his wife to it were not the occupation that is meant when a dwelling house is spoken of. The weekly tours of inspection of the farmer and members of his family living on the grounds, and his supervision of it from his own house, were more useful, but they fell short of being occupation of it. The term "unoccupied," used in the policy, is entitled to a sense adapted to the occasion of its use, and the subject matter to which it is applied. It does not need that we should go into a discussion of the good reasons for exacting the condition on taking a risk upon a dwelling house. It is enough that the parties have come into that covenant. It is to have a meaning fitted to the circumstances in which it was made and to the subject to which it related. We have already said enough to show our opinion that, for a dwelling house to be in a state of occupation, there must be in it the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage."

In that case the out-buildings, wash and wood house, privy, etc., were burned. As to them the court said: "Now, these out-buildings were appurtenant to

the dwelling house; the use of them was concurrent with the use of the dwelling house; they were parts of one domestic establishment, and separated but forty feet from the main building. It is too plain for denial, save as a *denier resort*, that the occupancy of them, in habitual, continuous use for the purposes for which they were built and to which they were put, began when that of the dwelling house began, and ended when that ended."

An owner of a dwelling house in Iowa insured it, and at the time of the issuing of the policy, it was occupied by a tenant. He afterwards exchanged the property and requested the tenant to move into the house obtained by the exchange, which he did. He moved in the evening, leaving some articles of furniture, etc., in the house, and at midnight, the same night, the house was burned. The policy provided that if the house should become vacant, or unoccupied, the policy should be void. Upon these facts being established, it was held that the house was vacant and unoccupied, within the meaning of the policy, and that the insured could not recover. *Snyder* v. *Fireman's Fund Ins. Co.,* 78 Iowa 146, 42 N. W. 630. The *Continental Ins. Co.* v. *Kyle,* 124 Ind. 132, 19 Am. St. 77, is a case strongly in point. The opinion is an exhaustive one, and many authorities are collected and cited. In that case the policy was conditioned to be void if the house should become "vacant or unoccupied," and was when the policy was issued, used as a dwelling by a tenant. The tenant moved out, and the parties to whom the owner had previously rented it, made certain repairs on the premises, intending to move into the house on the 1st day of April. On March 30, the prospective tenants put some hay into the loft of a stable on the premises and buried some

potatoes on the lot near the house.    There was nothing left in the building but some planes which had been used by the carpenters.    It was held that the house was vacant within the meaning of the condition of the policy, and that it was void.

Many other authorities might be cited, but we do not see any necessity for extending this opinion for that purpose.    The facts in the case before us, as shown by the evidence and special verdict, present even a stronger case than any of those cited.    Here Pierson had moved out a week before the fire, and before he moved Cox stored his goods in the west kitchen; went to Indianapolis, and returned, went to the house to black his boots; his wearing apparel had been removed long before; he ate and slept at another place; had no intention of returning to the house to live, and was ready at any time, upon notice to move his goods, and on the very night of the fire he went to Indianapolis and did not even leave any one to look after the property.

The policy provided that if the house "be or become vacant, unoccupied or uninhabited," it should be void. It certainly cannot be urged with any degree of reason that the building was, under the facts, inhabited. The provision of the policy under consideration is plain and easily understood.    As was said in *Continental Ins. Co.* v. *Kyle, supra,* "Policies of insurance, like all other contracts, are to be construed with reference to the intention of the parties, to be ascertained from the terms and conditions placed therein."    It is plain therefore that the appellant intended to provide against the increased risk, by the property becoming "vacant, unoccupied, and uninhabited," which it had a right to do, and in construing this condition we must look to the subject-matter of the contract. See *Continental Ins. Co.* v. *Kyle, supra,* and cases there cited.

Under the terms of the policy and the facts found, the property insured was "vacant, unoccupied, and uninhabited," within the meaning of the conditions of the contract, and hence there was no liability. The judgment is reversed, and the court below is directed to sustain appellant's motion for judgment on the special verdict.

Black, J., took no part in the decision of this case.