**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**CHARLES T. JENNINGS**
**THOMAS R. HALEY, III**
**JOSEPH A. SAMRETA**
Jennings Wheeler & Haley, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**RICHARD S. EYNON**
**DAVID M. BRINLEY**
Eynon Law Group, P.C.
Columbus, Indiana

**WILLIAM F. MERLIN, JR.**
Merlin Law Group, P.A.
Tampa, Florida

FILED

May 06 2013, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PROPERTY –OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1205-CT-275 |
| | ) | |
| GRANDVIEW ONE, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia J. Ayers, Judge
Cause No. 49D04-0909-CT-44722

**May 6, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Property-Owners Insurance Company (Property-Owners)[1] appeals from the trial court's order granting partial summary judgment on the issue of vacancy in favor of the insured, Grandview One Corp, whose stock is solely owned by Robert J. Morgan, who serves as its president. Property-Owners presents the following dispositive issue for our review: Did the trial court err by granting partial summary judgment on the issue of vacancy, a term not defined in the policy, when there is a question of material fact on the issue?[2]

We reverse and remand.

Grandview One owns property located at 5626 East 16th Street in Indianapolis, Indiana consisting of a 3-story medical office building and surrounding land. Morgan, who was a physician, managed the building[3] and had a medical practice located in the building. Other physicians and agencies, including the Indiana Department of Family and Social Services Administration (FSSA), had leased office space in the building as well. Morgan's medical license was revoked sometime in 2000 and he ceased practicing medicine in that building or anywhere else. The other physician-tenants gradually moved their practices out of the

---

[1] Auto-Owners Insurance Company was originally named as the insurer-defendant in this action. By joint stipulation of the parties, and approval by the trial court, Property-Owners was substituted as the real party in interest on March 6, 2012. To avoid confusion, we will refer to the insurer-defendant as Property-Owners regardless of the name appearing on the pleadings in the record.

[2] Property-Owners also argues in the alternative that the trial court erred by failing to enter partial summary judgment in its favor on the issue of vacancy. Because of our resolution of the stated issue, we do not reach Property-Owners's alternative argument.

[3] Morgan also established a corporation known as Grandview Two, which held residential property consisting of five townhouses used as rental property in Indianapolis. Grandview One and Grandview Two were merged at some point. The commercial property, consistently held by Grandview One, is the property at issue in this appeal.

2

building. By 2007, FSSA was the last tenant in the building and continued to conduct its operations there as the building deteriorated, ultimately leaving that same year.

Property-Owners is a foreign corporation authorized to conduct business in Indiana. Property-Owners sold a $3,000,000 commercial insurance policy covering Grandview One's building on East 16th Street to Morgan. On June 29, 2007, Property-Owners sent a notice of non-renewal to Grandview One, with an effective date of November 1, 2007, which stated as follows in support of non-renewal:

> [Grandview One] recently had claim on building on 6/13/07. When claims inspected loss, they found that the building was vacant. Per agent, a government welfare branch used to be in this building (as of this year). However, they required the insured to do some work on the building and moved out. Agent has no idea if the building will be inhabited any time soon. Due to this, the building is ineligible for coverage.

The notice also contained information about the process of obtaining replacement insurance. The recent claim referred to in the notice was Grandview One's claim related to the theft of downspouts from the commercial building.

Morgan disputed the non-renewal determination, and Morgan's insurance agent, Dick Naze, of Naze-Perry Insurance Corporation, faxed a note to Property-Owners informing Property-Owners that Grandview One had an office in the building. By email correspondence, a representative of Property-Owners acknowledged that Grandview One was disputing the non-renewal and indicated that an inspection of Grandview One's commercial property would be conducted in order to verify occupancy of the building, among other things. William Morgan, Morgan's brother, who sold insurance through Naze-Perry,

3

discussed both the non-renewal and setting up the ensuing inspection of the commercial building with Morgan.

Midwest Technical Inspections was the company hired by Property-Owners to conduct an inspection of the commercial building and property. The inspection was conducted on August 14, 2007, and findings in the form of a survey report were completed. One of the findings included in the survey report was as follows: Description of Operations: Risk is a three-story office building, currently vacant except for the approximate 800 ft$^2$ occupied by the insured as his office. *Appellee's Appendix* at 6. Property-Owners renewed Grandview One's insurance policy on or about November 1, 2007, to provide coverage from November 1, 2007 through November 1, 2008.

On August 14, 2008, Grandview One notified Property-Owners that the commercial building had been vandalized, and that the structure and contents were damaged. The damage reported included the theft of copper wires, pipes, and air conditioning units, in addition to water damage and mold problems. A police report from the incident indicated that Morgan estimated the value of the damage and items taken was approximately $50,000.

On August 18, 2008, Property-Owners sent a "Request For Proof of Loss and Records" to Grandview One. *Id*. at 1780-87. The correspondence also included a request for full compliance with the terms of the policy and an advisement to Grandview One that it was reserving its rights under the policy.

After Property-Owners received notification of the claim, Kelly Ross of New York Claims Service was hired to begin the investigation and conduct a walk-through of the

4

premises, which took place on August 19, 2008. Ross submitted her report to Property-Owners to the attention of Eric Young on September 4, 2008. Her report states in pertinent part as follows:

> DEVELOPMENTS:
> During my meeting with Mr. Morgan we inspected the entire building, observing the vandalism and theft damages. Mr. Morgan indicated that he visits the building once every week to 2 weeks, although he had been out of town in the 2 weeks prior to discovering the loss.
>
> The building was originally inhabited by the State of Indiana, their Welfare and Food Stamps division. Mr. Morgan informed me they moved out of the building sometime in April 2007. The building has been vacant since their move. Mr. Morgan stated he keeps an office in the building which he visits occasionally to conduct file work. This office is located on the second floor and consists of a small desk and chair. Files are located in and around the office. Mr. Morgan does not see clients in this office and does not employ personnel to assist in his work. This office is not open to the public as the building is locked all the time.
>
> . . . .
>
> . . .I also requested copies of utility bills for the previous 90 days to demonstrate vacancy of the building. . . .

*Id*. at 50.[4]

---

[4] In addition, Ross's affidavit, dated February 18, 2011, stated in pertinent part as follows:

. . . .

9. As outlined in my September 4, 2008, report I found that neither Grandview One nor any tenant maintained a regular presence in the building, nor conducted business on the Premises in the months prior to or at the time of the loss.

10. As outlined in my September 4, 2008, report my investigation revealed that neither Grandview One nor Robert Morgan had seen clients on the Premises, no other businesses were operating on the Premises, and the commercial building was kept locked, in the months prior to and at the time of the loss.

11. As instructed by [Property-Owners] Insurance Company, I requested that Grandview One produce specific documents, including utility records, on multiple occasions. A true and accurate copy of correspondence sent to Grandview One are attached hereto as Exhibit "2."

In January of 2009, Grandview One, by Morgan, hired Jack Bowman of J & B Claims Consultants, Incorporated, to assist in resolving Grandview One's claim. Property-Owners and Bowman began communicating regarding the claim. On March 31, 2009, Eric Young of Property-Owners sent another letter to Grandview One and enclosed another proof-of-loss form.

On May 19, 2009, Grandview One submitted its proof-of-loss form claiming $1,599,953.95 in damages. Property-Owners made further requests for documentation from Grandview One concerning whether the building was vacant in the sixty days prior to the date of the incident giving rise to the claim. Property-Owners also reiterated that it was reserving its rights under the policy.

Property-Owners denied Grandview One's claim citing the following three bases for the denial: (1) the policy's vacancy exclusion provision; (2) Grandview One's failure to submit a timely proof-of-loss form; and, (3) Grandview One's failure to cooperate and produce documents during the investigation of the claim. Grandview One filed a complaint, which was subsequently amended, against Property-Owners alleging in pertinent part, breach of contract, bad faith, deception, and fraud. After the filing of numerous pleadings and motions, and a failed attempt to mediate the controversy, the trial court held a hearing on Grandview One's motion for partial summary judgment, Property-Owners's motion for

---

12. Despite repeated requests for this documentation, neither Grandview One nor any of its agents ever provided the documents requested.

. . . .

*Id*. at 1536.

6

summary judgment, and all other pending motions. The trial court took the matter under advisement and the parties were requested to prepare proposed findings of fact and conclusions thereon. Ultimately, in relevant part, the trial court found as a matter of law that the commercial property was not vacant and granted partial summary judgment in favor of Grandview One, and denied Property-Owners's motion for summary judgment on the issue. The trial court granted Property-Owners's motion to enter partial final judgment, thus allowing Property-Owners to appeal the trial court's ruling on the vacancy exclusion.

Property-Owners appeals from the trial court's ruling on the parties' motions for summary judgment. Our standard of review for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Bd. of Sch. Comm'rs of City of Indianapolis v. Pettigrew*, 851 N.E.2d 326 (Ind. Ct. App. 2006), *trans. denied*. All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Bd. of Sch. Comm'rs of City of Indianapolis v. Pettigrew*, 851 N.E.2d 326. Review of a summary judgment motion is limited to those materials designated to the trial court. *Id*. Our standard of review is not altered by the fact that the parties have filed cross-motions for summary judgment. *Alexander v. Marion Cnty Sheriff*, 891 N.E.2d 87 (Ind. Ct. App. 2008), *trans. denied*.

We first note that neither party disputes that the term "vacancy" is undefined within the policy. The parties do dispute the meaning that should be given to that term. The relevant portion of the trial court's order, less the citations to standards of review, follows:

7

. . . .

3. The Court first considers [Grandview One's] Motion for Partial Summary Judgment with regard to the applicability of the Policy's Vacancy Exclusion. [Grandview One] argues that the Property was not vacant due to the existence of [Grandview One's] office in the building. Evidence was submitted that Mr. Morgan maintained an office, including equipment, furniture and a computer on the Property. Utilities bills for the property have been produced indicating use of the Property. Additionally, [Grandview One] indicated that Mr. Morgan regularly visited the office for business purposes as well as to insure building maintenance and upkeep such as mowing the grass. [Property-Owners] argues that the Property was vacant as it was not occupied by people, only files and equipment.

. . . .

6. In the present matter, the Policy provides no definition of vacancy. Therefore, the Court must give the word its common meaning. [Property-Owners] argues that Indiana Courts have indicated that the words "vacant" and "unoccupied," when used in a policy must be regarded as interchangeable and equivalent in meaning. To support this argument [Property-Owners] relies on *Barker v. Brownsburg Lumber Co.*, 399 N.E.2d 426, 431 (Ind. Ct. App. 1980). Such an argument fails for two (2) reasons; 1.) The common definition does not support such a finding and 2.) The policy itself uses the two terms independently.

7. As [Grandview One] correctly points out, the common definition of vacant is "deprived of contents; not filled; empty; as, a vacant room." *Webster's Unabridged Dictionary*. Although Black's law dictionary indicates that it may also be used to mean unoccupied.[sic] It goes on to state that Courts have sometimes distinguished the terms holding that "vacant" generally means completely empty, while "unoccupied" means not routinely characterized by the presence of human beings. *Black's Law Dictionary, 8th Ed*. In [the] present matter, the insured Property contained a small office for [Grandview One]. The office was used primarily for file storage, but appears to have been an active office space with running water, electricity, etc. Due to the existence of [Grandview One's] office, the Property was not vacant as defined by it[s] common meaning.

8. Secondly, the argument in favor of interchangeable use of the terms vacant and unoccupied fails due to their use within the Policy itself. As noted by [Grandview One], the Vacancy Exclusion of the Policy does not refer to or

8

mention the term unoccupied. However, the Policy's Cancellation Provision uses the terms individually as if they are to be considered separate and exclusive reasons for cancellation. Each term is offered as a reason for cancellation and therefore, they cannot be construed to have been intended as interchangeable and equivalent in meaning when tak[en] in light of their common definition. It is for these reasons that the Court finds that the Property was not vacant pursuant to the terms of the Policy.

9. Next, the court turns to [Property-Owners's] Motion for Summary Judgment on [Grandview One's] claims of bad faith, conversion, fraud, etc. Although, [Property-Owners's] initial decision to deny [Grandview One's] claim under the policy seems to lack the indicia of bad faith and may have been initially justified due to [Grandview One's] own failure to comply with the filing requirements under the Policy terms and neglected[sic] to do so for approximately eight (8) months following the initial claim. [Grandview One's] reasoning for this failure was explained as an inability to understand the Proof of Loss documents and failure by [Property-Owners] to assist in their completion. However, [Property-Owners's] behavior following receipt of the documentation of the loss may not have been justified. Therefore, genuine issues of material fact still exist as to [Grandview One's] possible claims for bad faith, conversion, deception fraud, etc.

. . . . .

*Appellant's Appendix* at 38-42.

The policy language at issue in this appeal and which is pertinent to review of the trial court's decision follows:

9

. . . .

## E. PROPERTY LOSS CONDITIONS

. . . .

3. Duties In The Event Of Loss Or Damage

You must see that the following are done in the event of loss or damage to Covered Property:

a.  Notify the police if a law may have been broken.

b.  Give us prompt notice of the loss or damage. Include a description of the property involved.

c.  As soon as possible, give us a description of how, when and where the loss or damage occurred.

d.  Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the limit of insurance.

e.  At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

f.  Permit us to inspect the property and records proving the loss or damages.

g.  If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance of your claim, including your books and records. In such event, your answers must be signed.

h.  Send us a signed, sworn statement of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

i.  Cooperate with us in the investigation or settlement of the claim.

j.  Resume all or part of your "operations" as quickly as possible.

. . . .

9.  Vacancy

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:

    a.    Not pay for any loss or damage caused by:
        (1)    Vandalism;
        (2)    Sprinkler leakage, unless you have protected the system against freezing;
        (3)    Building glass breakage;
        (4)    Water damage;
        (5)    Theft; or
        (6)    Attempted Theft.
    b.    Reduce the amount we would otherwise pay for the loss or damage by 15%.

Buildings under construction are not considered vacant.

. . . .

## BUSINESSOWNERS COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

A.    CANCELLATION

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a.    5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy.
        (1) The building has been vacant or unoccupied 60 or more consecutive days.  This does not apply to:
        (a)    Seasonal unoccupancy; or
        (b)    Building in the course of construction, renovation or addition.

    Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

. . . .

THIS ENORSEMENT CHANGES THE POLICY. PLEASE READ IT
CAREFULLY.

INDIANA CHANGES

BUSINESSOWNERS POLICY

. . . .

B.    Under Businessowners Common Policy Conditions, the following are amended:

    1.  Paragraph 2. of A. CANCELLATION is deleted and replaced by the following:

    2.  Cancellation of Policies In Effect

. . . .

        b.    More Than 90 days

If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium;
(2)  20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or
(3)  45 days before the effective date of cancellation if:
      (a)  There has been a substantial change in the scale of risk covered by this policy;
      (b)  Reinsurance of the risk associated with this policy has been canceled; or
      (c)  You have failed to comply with reasonable safety recommendations.

. . . .

*Appellant's Appendix* at 1626-40, 1661, 1709-10.

We pause to acknowledge that the second of the trial court's stated reasons for granting partial summary judgment on the issue of vacancy fails. The trial court cited to the cancellation provision in the policy in support of its rejection of Property-Owners's argument that the terms "vacancy" and "unoccupied" can be used interchangeably. The policy language was explicitly deleted as set forth above in an endorsement to the original policy.[5]

We now address the trial court's entry of partial summary judgment on the issue of vacancy and the definition the trial court selected for that term. Our Supreme Court provided the following guidance when reviewing insurance policy terms that are undefined:

> We acknowledge that failure to define a term in an insurance policy does not necessarily make it ambiguous. Additionally, an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party. But, an insurance policy is ambiguous if a provision is susceptible to more than one reasonable interpretation.
>
>  . . . .
>
> Although some "special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and insureds, if a contract is clear and unambiguous, the language therein must be given its plain meaning." On the other hand, " '[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer' and the policy language is viewed from the standpoint of the insured." "This strict construal against the insurer is driven by the fact that the insurer drafts the policy and foists its terms upon the customer. 'The insurance companies write the policies; we buy their forms or we do not buy insurance.'"

---

[5] The original language in the cancellation provision in effect provided a definition of vacancy by inclusion of the following language: Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision. In his deposition, Morgan testified that he estimated the portion of the building where he kept the items from his practice constituted 3% of the building's square footage. Because the cancellation policy language in A. 2. was deleted and replaced, and the quoted language is freestanding and arguably a part of A.2., we do not rely on it to reach our decision.

13

*Wagner v. Yates*, 912 N.E.2d 805, 810 (Ind. 2009) (internal citations omitted).

In this case, the insurance policy is not made ambiguous by virtue of the fact that the term "vacancy" is not defined. The policy clearly states that if the commercial building is vacant for sixty days prior to the incident giving rise to the claim, then there is no coverage for acts of theft and vandalism, *inter alia*.

The trial court chose to rely on a definition provided by *Webster's Unabridged Dictionary* meaning "deprived of contents; not filled; empty; as a vacant room," while also acknowledging that *Black's Law Dictionary* indicates that vacant may also be used to mean unoccupied. *Appellant's Appendix* at 40-41. We turn to prior cases addressing the issue of vacancy for purposes of insurance coverage.

In *Barker v. Brownsburg Lumber Co., Inc.*, 399 N.E.2d 426, 431 (Ind. Ct. App. 1980) a panel of this court stated the following about occupancy and vacancy in the context of the notice required under a mechanic's lien statute:

> It is true that fire insurance cases in construing policy provisions relating to the insured buildings' being "vacant" or "unoccupied" have adopted a narrow interpretation of those terms. *Homes Ins. Co. v. Boyd*, (1898) 19 Ind. App. 173, 49 N.E. 285; *Continental Ins. Co. of New York City v. Kyle*, (1890) 124 Ind. 132, 24 N.E. 727; annotation 47 A.L.R.3d 398 et seq. The reason for the narrow interpretation in the fire insurance cases is that vacancy or lack of occupancy, even for a short period of time, can significantly increase the risk of loss. No such reason exists in this case. We do not believe the fire insurance cases' definitions of occupancy are binding upon us in defining "owner-occupied" as used in the mechanic's lien statute.

> Therefore, we hold that an owner-occupied single or double family dwelling does not lose its status as such when the owner-occupant removes himself and his family from the dwelling temporarily in order that substantial repairs may be made to the dwelling, with the intention of resuming residency in the dwelling upon the completion of the repairs.

14

Further, in *Homes Ins. Co. v. Boyd*, 19 Ind. App. 173, 49 N.E. 284, 286 (1898) cited in the opinion in *Barker*, this court addressed the necessity of setting forth the lack of vacancy or occupancy in a complaint alleging breach of contract for failing to pay a claim under an insurance policy for a residential property. The policy language excluded coverage in the following manner, using the terms vacant, unoccupied, and uninhabited interchangeably:

> If the risk be increased in any manner, . . . or if the premises are now vacant, unoccupied, or uninhabited, or shall become vacant, unoccupied, or uninhabited, without written consent hereon," etc., "then . . . this policy shall become null and void."

In resolving the issue before it, this court quoted from *Insurance Co. v. Black*, 80 Ind. 513 (1881), another case in which the terms "vacant" and "unoccupied" were used interchangeably, but in that instance did so in the course of addressing the sufficiency of the allegations of a complaint. Our Supreme Court, in *Continental Ins. Co. of New York City v. Kyle*, 124 Ind. 132 (1890), considered insurance policy language excluding coverage that used "vacant" and "unoccupied" interchangeably.

In following this line of cases, we conclude that the term vacancy, for purposes of the exclusion in the Property-Owners insurance policy, is interchangeable with unoccupied, and that the trial court erred by holding otherwise as a matter of law.

That said, we decline Property-Owners's invitation to direct the entry of summary judgment in its favor on the issue of the vacancy exclusion. Here, the trial court found that the evidence of utility usage and the storage of Morgan's office furniture and files supported a conclusion that Grandview One's building was not vacant. On the other hand, if a person

15

were to drive past a hotel sign bearing the indication that there was a vacancy, the person would expect the absence of a human presence in one if not more of the rooms. One would not expect to find the room completely devoid of furnishings, and thus empty. Indeed, the parties have designated substantial evidence on each side of the issue. As such, there is a genuine issue of material fact precluding summary judgment with respect to whether the evidence does or does not meet the plain meaning of the term vacant. We therefore reverse the trial court's order entering partial summary judgment in favor of Grandview One and remand the matter for further proceedings.

Judgment reversed and remanded.

ROBB, C.J., concurs.

CRONE, J., concurs in result with a separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

PROPERTY-OWNERS INSURANCE )
COMPANY, )
 )
    Appellant-Defendant, )
 )
        vs. )     No. 49A05-1205-CT-275
 )
GRANDVIEW ONE, )
 )
    Appellee-Plaintiff. )

**CRONE, Judge, concurring in result**

The policy states that Property-Owners will not pay for any loss or damage caused by theft, vandalism, or water damage if Grandview One's building has been vacant for more than sixty consecutive days before that loss or damage. The policy does not define "vacant." The majority attempts to determine whether "vacant" has the same meaning as "unoccupied," a term that was deleted from (and was not defined in) the original policy. As I see it, the real issue is simply whether "vacant" is ambiguous. Based on the dictionary definitions mentioned in the trial court's order, I believe that it is. Although ambiguities are typically construed strictly against the insurer, I believe that entering summary judgment for either

party would be inappropriate because reasonable minds could differ as to whether the designated evidence establishes that the building was "vacant." Therefore, I respectfully concur in result.