[14763. In Bank.—April 24, 1893.]

## J. W. MAWHINNEY, Respondent, v. SOUTHERN INSURANCE COMPANY, Appellant.

Fire Insurance—Harvesting Machine—Construction of Policy.—Under a policy of fire insurance of a harvesting machine purporting to be upon a "threshing outfit in the field," and insuring it against loss by fire while "operating in the grain fields and in transit from place to place in connection with harvesting," etc., the insurance company is not liable for a loss of the machine by fire near a blacksmith shop, to which it was taken and left for general repairs,

which would require two weeks to make, although taken there with a view to going into the field for harvesting as soon as it was ready to fulfill contracts which had been made for the threshing of grain. The harvester was not "in transit from place to place in connection with harvesting" when destroyed, within the terms of the policy.

ID.—LIABILITY OF INSURER.—An insurer is not liable, except upon proof that the loss has occurred within the terms of the policy, and when making the policy he is at liberty to select the character of the risk he will assume.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial.

*T. C. Van Ness,* and *J. P. Meux,* for Appellant.

As the harvester was not, at the time of its destruction, operating in the grain fields, or in transit from place to place, while so operating in connection with harvesting, the defendant is not liable. (1 Wood on Fire Insurance, 2d ed., sec. 47; *Lycoming County Ins. Co.* v. *Apdegraff,* 40 Pa. St. 311; *Wall* v. *East River Ins. Co.,* 7 N. Y. 370; *Houghton* v. *Manufacturer's Ins. Co.,* 8 Met. 114.)

*Church & Cory,* for Respondent.

HARRISON, J.—The defendant made its policy of insurance in favor of the plaintiff's assignor, by which it insured him to an amount not exceeding eight hundred dollars for the term of three months from June 2, 1890, against loss or damage by fire to the following described property, "while located and contained as described herein, and not elsewhere, to wit:—

"Threshing outfit in the field.

"Eight hundred dollars on one combined harvester complete, all while owned by assured and known as Barrett's harvesting machine and outfit, and operating in the grain fields and in transit from place to place in connection with harvesting in Fresno County, of California."

The harvester was destroyed by fire June 10, 1890, and in an action upon the policy the complaint alleged that its destruction occurred "while in transit from L Street in Fresno, the place where the same was at the time of said insurance, to the grain fields for use in connection with the harvest in said Fresno County." This allegation was denied by the defendant, and was the issue upon which the cause was tried. At the close of

the plaintiff's case the defendant moved for a nonsuit upon the ground that the evidence failed to sustain this allegation of the complaint. The court denied the motion, and the defendant declining to offer any evidence, judgment was rendered in favor of the plaintiff, from which and an order denying a new trial the defendant has appealed.

At the date of the policy the harvester was in a building on L Street, in the city of Fresno, where it had been stored since the previous season, and on the next day after the policy was issued it was taken to a blacksmith shop in the city of Fresno, about a quarter of a mile distant, for general repairs, where it remained until it was destroyed on the night of June 10th. The plaintiff testified: "The machine had never got to the grain fields when it was burned, but was left at this shop for the purpose of repairs. I helped to take it there. It had never been taken from the shop after being carried there." Barrett, the plaintiff's assignor, to whom the policy was issued, testified that "it required about one hundred and seventy-five dollars' worth of repairs upon the harvester to put it in a condition to be used, and took about two weeks to repair it. I took the machine straight from Mr. Mawhinney's place to the shop on the other side of the railroad track, about a mile, from Mr. Mawhinney's place. It had not been used at all prior to that when carried to the shop for repairs, and there it stood until it burned. It stood about sixty or one hundred feet away from the shop, with several machines between it and the shop; none were burned except this one, neither was the shop burned. I had never carried it into the field, nor put it to any use after the insurance was procured, nor used it in any way except to take it to the shop for repairs; and had not taken it from any place with a view of harvesting at that time, and nothing had been done in the way of harvesting that season; only the repairs I have stated. I mean I had taken it to the shop for the purpose of repairs, and with a view of going into the field for harvesting as soon as it was ready, and used it for no other purpose during that season."

Upon this testimony the nonsuit should have been granted. The harvester was not "operating in the grain fields," or "in transit from place to place, in connection with harvesting" at

the time it was destroyed. It had not been used at all in connection with harvesting during that season, and the testimony of Barrett that it required about two weeks to make such repairs as would put it in a condition to be used, shows that it could not have been at the time of the loss in transit from place to place, "in connection with harvesting." The policy purported to be on a "threshing outfit in the field," and its terms did not cover the harvester while it was at a blacksmith shop for repairs, and it cannot be said that while it was at the shop in Fresno, to which it had been taken for the purpose of putting it in repairs for the season, it was in transit "from place to place, in connection with harvesting," any more than if it had been sent to San Francisco for repairs, and had been there destroyed. An insurer is not liable, except upon proof that the loss has occurred within the terms of the policy, and when making the policy he is at liberty to select the character of the risk he will assume. If the terms of this risk are distinct and without ambiguity, the assured cannot complain if the risk assumed does not cover the loss. The locality of the property, as well as its custody, and the incidental care that by reason of such locality and custody the property will naturally receive, are elements which enter into a consideration of the risk to be assumed, and if they are made a part of the conditions of the policy they must be observed by the assured as fully as any other conditions before the insurer can be made liable for a loss. In the present case the insurer would reasonably assume that the harvester would be under greater care and watchfulness while it was actually operating in the fields, or in transit from place to place for such purpose, than if left standing unhoused and uncared for in open grounds near a blacksmith shop; but whatever may have been the motives for limiting the extent of his risk, he cannot be made liable for a loss that was not covered by the risk assumed in the policy.

The judgment and order are reversed.

De Haven, J., Beatty, C. J., and Fitzgerald, J., concurred.

Paterson, J., dissenting.—I dissent. The plaintiff testified that the harvesting season in Fresno County commenced about

the 10th of June; that the machine was sent to the blacksmith for repairs, which were nearly completed when it was burned. I. N. Barrett testified that the object of taking the machine to the blacksmith shop was to repair it for work in the field; that a contract had been made for cutting grain, and that he had made arrangements to take the machine out to the field on the eleventh day of June, or as soon as the necessary repairs were completed; that one contract had been made for harvesting before the machine left plaintiff's place, and another contract after it reached the shop, but no work had been done with it that season.

Upon this showing I think the motion for a nonsuit was properly denied. The taking of the machine from the place where it was housed to the shop, and the work done upon it there were acts done "in connection with harvesting"—as much so as if the machine had already been in operation, and had been returned to the shop for repairs. The plaintiff when he took it out for repairs intended not to return it to the place where it had been stored, but to continue on to the field of operations as soon as the necessary repairs were completed. If the plaintiff had actually entered the field he was to harvest, although he knew that the machine needed repair, and had returned to the blacksmith shop, there would be no question whatever of his right to recover herein. The law did not require of him such a vain thing. Contracts had been made for the harvesting of crops, and the machine was "in transit from place to place, in connection with harvesting," within the meaning of that language, as used in the policy, when it was destroyed by fire.

It is evident that by the terms of the provision of the policy quoted, the parties intended that so long as the machine remained in the house or shed on plaintiff's place, where it had been stored for the winter, the company should not be liable; but that as soon as it was removed therefrom and started out to operate in the grain fields, the company should become liable. A machine is not so likely to be burned when in the hands of a crew of threshers as when stored in a hay barn, nor is it so likely to be burned when on the road or when standing in front of a blacksmith shop for repairs. When plaintiff took the

machine from its storehouse his intention was to commence operations in the grain fields he had promised to harvest. The stop made at the shop for repairs was merely incidental to the main object, viz., actual work in the harvest field towards which they were headed.

GAROUTTE, J., and McFARLAND, J., concurred in the foregoing dissenting opinion.