[Civ. No. 2580.   Third Appellate District.—May 29, 1923.]

THEODORE AGALIANOS, Respondent, v. AMERICAN CENTRAL INSURANCE CO. (a Corporation), Appellant.

[1] FIRE INSURANCE—OCCUPANCY OF BUILDING—PLEADING.—In an action to recover on a fire insurance policy covering a building and its contents "only while occupied for mercantile and restaurant purposes," the complaint must allege that at the time of the fire the building was used for mercantile and restaurant purposes.

[2] ID.—SUFFICIENCY OF COMPLAINT—WAIVER OF OBJECTIONS.—In an action to recover on a policy of fire insurance, an allegation to the effect that from the date of the issuance of the policy down to and including the day it was destroyed by fire "plaintiff was the

owner of the property . . . including the one-story frame building thereon occupied for mercantile and restaurant purposes" is sufficient, in the absence of demurrer or other timely objection to the pleading, to show that at the time of the fire the building was occupied and used for mercantile and restaurant purposes.

[3] ID.—PAYMENT OF PREMIUM—EVIDENCE—FINDING.—In an action to recover on a policy of fire insurance and in which the defendant, by way of affirmative defense, pleaded the cancellation of the policy prior to the time of the fire, such defense being based upon a notice served by defendant upon plaintiff to the effect that a certain sum was due as premium and that unless such premium was paid within a specified number of days the policy would be canceled, the evidence was sufficient to justify the trial court in determining that the premium was paid by plaintiff to defendant's agent prior to the receipt of such notice and in finding that the policy was not canceled.

[4] ID.—CANCELLATION CONTINGENT UPON NONPAYMENT OF PREMIUM—CONSTRUCTION OF NOTICE.—Notwithstanding a provision in a fire insurance policy giving either the insurer or the insured the right to cancel the policy at any time, without giving any specific or any reason therefor, a contingent notice by the insurer to the insured that a certain sum due as premium has not been paid and that "unless said premium be paid on or before five days from the date of service of this notice, said policy . . . will stand canceled for nonpayment of premium without further notice, and thereafter be null and void, and no liability will exist thereunder," will not effect a cancellation of the policy where the insured pays such premium within the time specified or has paid the same prior to the receipt of such notice.

[5] EVIDENCE — SUSTAINING OF OBJECTIONS — ABSENCE OF ERROR. — It cannot be held that the rulings of the trial court sustaining plaintiff's objections to certain questions asked of a witness for the defendant were erroneous, where it is apparent that even if the court had allowed the questions the witness would not have been able to give any more satisfactory answers thereto than he had given to questions previously propounded to him and which called for the same testimony.

[6] ID.—INCOMPETENT TESTIMONY—CROSS-EXAMINATION.—Cross-examination is not allowable as to incompetent testimony to the admission of which no objection is made.

[7] ID. — IMPEACHMENT OF OWN WITNESS — FOUNDATION. — One may cross-examine his own witness for the purpose of laying the foundation for his impeachment and so impeach him, if he can,

---

4.   What time notice of cancellation of fire insurance becomes effective, notes, **Ann. Cas.** 1918C, 120; 39 **L. R. A. (N. S.)** 829.

if he is taken by surprise by the testimony given by such witness; but the surprise which will open the way to such a course must be substantial and must be founded not only on the fact that the witness has given testimony at variance with what the party producing him as a witness had good reason to believe, before calling him to the witness-stand and examining him, that it would be, but that such testimony is prejudicial or detrimental to the case of such party.

[8] ID.—SUFFICIENCY OF EVIDENCE—APPEAL—SPECIFICATION OF ERROR. The sufficiency of the evidence to support a particular finding is not subject to review on appeal where the bill of exceptions contains no specification of the insufficiency of the evidence to support such finding.

[9] FIRE INSURANCE—TERMINATION—SUFFICIENCY OF NOTICE.—Where a fire insurance policy gives the insurer the right to cancel the policy at any time, without giving any specific or any reason therefor, a written notice that a certain sum due as premium has not been paid and that "unless said premium be paid on or before five days from the date of service of this notice, said policy . . . will stand canceled for nonpayment of premium without further notice, and thereafter be null and void, and no liability will exist thereunder," will operate, *ipso facto*, to cancel the policy, if the insured fails to pay the premium within the time specified. (On modification of opinion.)

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Affirmed.

The facts are stated in the opinion of the court.

Coogan & O'Connor and Arthur L. Levinsky for Appellant.

Stanley M. Arndt, N. A. Brown and George F. McNoble for Respondent.

HART, J.—The plaintiff sued to recover on a policy of insurance, issued by the defendant to the plaintiff, and covering a certain building and the contents thereof, situated in Lodi, San Joaquin County.

The action was tried by the court, the parties thereto having expressly waived a trial by jury. The plaintiff was awarded judgment in the sum of $1,800, which is the amount of the risk provided in the policy. A motion for a new trial was made by the defendant and denied by the court.

The defendant prosecutes this appeal from the judgment upon a bill of exceptions.

The important allegations of the complaint are as follows:

"II.

"That on the 15th day of April, 1921, at Lodi, County of San Joaquin, State of California, in consideration of the payment by the plaintiff to the defendant of the premium of $81.00, the defendant, by its agents duly authorized thereto, made its policy of fire insurance in writing to the amount of $1800.00, a copy of which is annexed hereto marked 'Exhibit A,' and is hereby referred to and made a part hereof as if herein set forth in full;

"III.

"That on said 15th day of April, 1921, and for a long time prior thereto and from that date on up to and including the 2nd day of July, 1921, the plaintiff was the owner of the property situated at No. 10 South Main street, City of Lodi, San Joaquin County, State of California, including the one story frame building thereon occupied for mercantile and restaurant purposes and the merchandise therein contained and the store, office, and work shop, furniture, fixtures and equipment, implements, signs and tools and supplies incidental to the business being carried on in said premises;

"IV.

"That plaintiff now is and at all times herein mentioned has been the owner of the property situated at No. 10 South Main street, City of Lodi, San Joaquin County, State of California;

"V.

"That on the 2nd day of July, 1921, said one story frame building, together with all its contents including said merchandise and said store, office and work shop, furniture, fixtures and equipment and said implements, signs and tools and said supplies, were all and each of them totally destroyed by fire."

The answer of the defendant consists of a denial of the allegations contained in paragraphs 3, 4, 5, and 6 of the complaint and a special defense based upon the alleged cancellation of the policy by the defendant upon the twenty-first day of June, 1921, and prior to the day on which the

property was destroyed by fire, to wit, the second day of July, 1921.

Among other provisions the contract of insurance between the plaintiff and the defendant contains the following:

"1.—$1000.00. On the one story roof frame building and its additions (if any) of like construction communicating and in contact therewith, including foundations, sidewalks, plumbing, electrical wiring and stationary heating and lighting apparatus and fixtures; also all permanent fixtures, awnings, wall and ceiling decorations and frescoes, stationary scales and elevators, belonging to and constituting a part of said building, *only while occupied for mercantile and restaurant purposes* and situate as above."

The point first urged for a reversal and which is raised for the first time on this appeal is that the complaint does not state a cause of action on the policy because it fails to show that the building covered thereby was, from the time of the issuance of the policy until and including the time at which the building was destroyed by fire, used only for mercantile and restaurant purposes, an allegation which is essential to the statement of a cause of action under the above provision of the policy. There was no objection by demurrer to the sufficiency of the complaint to state a cause of action, nor was there any such objection made in the answer or during the progress of the trial by way of opposition to evidence offered by the plaintiff in support of the complaint; but failure to object to a complaint for want of facts is not waived and may be raised at any time. (Code Civ. Proc., sec. 434; *Arnold* v. *American Ins. Co.*, 148 Cal. 660, 663 [25 L. R. A. (N. S.) 6, 84 Pac. 182].)

[1] It has been held that where, as here, the action is to recover on an insurance policy, a cause of action is not stated unless it be shown by the complaint that the loss alleged was within the terms of the policy. In this case, therefore, under the construction placed by the defendant upon the above provision of the contract between the insurer and the insured, it was, to state a cause of action against the defendant, indispensably necessary to allege that the building destroyed was, at the time of the fire, used by the insured for mercantile and restaurant purposes. (*Allen* v. *Home Ins. Co.*, 133 Cal. 29 [65 Pac. 138]; *Arnold* v. *American Ins. Co.*, 148 Cal. 660 [25 L. R. A. (N. S.) 6, 84 Pac.

182]. See, also, *Benicia Agr. Works* v. *Germania Ins. Co.,* 97 Cal. 468 [32 Pac. 512]; *Mawhinny* v. *Southern Ins. Co.,* 98 Cal. 184 [20 L. R. A. 87, 32 Pac. 945]; *Slinkard* v. *Manchester Fire Assur. Co.,* 122 Cal. 595 [55 Pac. 417].)

As to the meaning of the provision of the policy above quoted herein, the contention of the appellant is that the words "only while occupied for mercantile and restaurant purposes" refer to the building itself, while, on the other hand, the plaintiff insist that, interpreting the provision according to its grammatical construction, as in this case (so it is contended) it should be construed, the said words mean this: That all permanent fixtures, awnings, wall and ceiling decorations and frescoes, etc., belonging to or constituting a part of said building, shall remain covered by the policy only for such time, during the term of the policy, as the building shall be "occupied for mercantile and restaurant purposes." In other words, the plaintiff takes the position that said provision comprises two different and independent paragraphs or parts, each dealing with a different subject matter; that the intention to disconnect the two paragraphs so that each should be read without reference to the other, is clearly shown by the fact that the second paragraph is not only separated from the first by a semicolon, but commences with the word "also"; that, as thus considered, the natural and rational meaning of the entire article or provision is that the "appellant insured the building, the merchandise and the store, office and work shop, furniture, fixtures and equipment, regardless of the nature of occupancy, but that appellant only insured the permanent fixtures, awnings, wall and ceiling decorations and frescoes as long as the building was occupied for restaurant and mercantile ⹁purposes." (Resp. brief, p. 9.)

[2] There is much force in the view that counsel for the plaintiff thus take of the provision of the policy in question; but it is not necessary to determine this particular controversy herein, since, assuming that the defendant's construction of the provision is sound, and conceding, as must be done, that it was necessary, to state a case for the plaintiff, to allege that the building at the time of the fire was occupied and used for mercantile and restaurant purposes, we are persuaded to the belief that the complaint in paragraph 3 thereof, in the absence of a demurrer thereto,

is sufficient in that particular. It will be observed that in said paragraph it is, in effect, alleged that from the date of the issuance of the policy down to and including the second day of July, 1921, on which day it was destroyed by fire, the building was occupied for mercantile and restaurant purposes. The complaint in this regard may be amenable to the criticisms of a demurrer on special grounds, but, even so, it is sufficiently clear to show that the building was, at the time of the fire, used for mercantile and restaurant purposes. At least the facts stated in paragraph 3 clearly imply the existence of the fact that the building was, at the time of the fire, occupied and used for said purposes, and this is sufficient, in the absence of a demurrer or other appropriate and timely objection to the pleading. The courts are disinclined to view with favor objections to pleadings specifically made for the first time after judgment where it is clear that, upon suggestion before trial, the defect or defects could have been easily remedied or overcome. Speaking of such a situation in a case which, as we have seen, involved precisely the same point as the one we are now considering, it is said in *Arnold* v. *American Ins. Co., supra:*

"A somewhat liberal rule, therefore, has frequently been applied in construing a complaint where the objection is made for the first time after judgment. Facts essential to a cause of action appearing by reasonable implication only, and allegations made in the form of a legal conclusion, which merely implied the necessary material facts, have been held sufficient as against such an objection. An example of this is the case of *Penrose* v. *Winter,* 135 Cal. 289 [67 Pac. 772], where there was no other allegation of the essential fact of nonpayment except the allegation that 'there is now due and owing,' etc. This was held sufficient after judgment, the ground of the ruling being that the objection was rather to the manner of pleading an essential fact than to the total failure to allege such fact, and that such faults, in the absence of demurrer, are cured by the judgment."

While, obviously, the mere admission, either expressly or impliedly, of counsel for the defendant that the complaint is sufficient in the statement of a cause of action cannot have the effect of making a complaint wanting in sufficient facts

a good pleading, yet it is undoubtedly true in this case that counsel for the defendant assumed that the complaint herein is sufficient in all respects, for they not only failed to challenge its sufficiency by demurrer or other legal mode of testing the sufficiency of a pleading, but, on the opening of the trial, voluntarily and expressly limited by stipulation the trial to the issue of the alleged cancellation of the policy prior to the date of the destruction of the building and its contents by fire. The stipulation is as follows:

"Mr. Levinsky: We will admit on behalf of the defendant that the policy was issued by the agent, Mr. De Force, at Lodi, and that a fire occurred, and proof of loss was made within time, and if the premium has been paid, and the policy has not been canceled by reason of nonpayment or otherwise, that the amount of $1,800 has been unpaid and is the loss."

This stipulation, it is clear, involves an admission of all the facts essential to the statement of a cause of action for a recovery upon the policy.

[3] We are now to consider the next point insisted upon for a reversal, to wit, whether the policy was actually canceled prior to the day on which the building and its contents were destroyed as alleged in the complaint. It was admitted by the plaintiff at the trial that the defendant addressed to and served upon the plaintiff a notice in writing, dated June 15, 1921, to the effect that the premium of $81 due the defendant under the policy in question had not been paid, and further likewise notified plaintiff that "unless said premium be paid on or before five days from the date of service of this notice, said policy and the whole thereof, including mortgage agreement, if any, will stand canceled for nonpayment of premium without further notice, and thereafter be null and void, and no liability will exist thereunder."

It will be readily perceived that the above notice is not a notice of cancellation. It was merely a notice of intention to cancel the policy unless within the designated time the premium is paid. It did not operate, *ipso facto,* to cancel the policy, but merely notified the defendant that unless he complied with the condition therein stated within the time specified in the notice the policy would be canceled.

The plaintiff positively testified that he, in three different installments, paid in cash the premium of $81 to one Byron A. De Force, the local agent of the defendant at Lodi, through whom the policy of insurance involved herein was issued by the defendant, long prior to the receipt of the above notice.

De Force was made a witness by the defendant and questioned closely as to the matter of the claimed payments by the plaintiff, but stated that, owing to the fact that he was suffering from alcoholism about the time the policy was issued and for some time thereafter, he was unable to say how much money was paid on the premium or in what manner it was paid. In fact, his testimony was so unsatisfactory and, indeed, so unintelligible upon the subject matter thereof that the trial judge was impelled to remark: "The witness has not specifically, certainly testified to anything in any fashion that the court can consider it." He did not deny receiving the payment of the premium in full nor did he affirm that he had received such payment. As we shall later see, counsel for the defendant undertook to make him say that part of the payment for the premium was in the application of a personal debt he owed the plaintiff to the satisfaction of the amount due on the premium, but he seemed unable to remember whether such was the fact or not and refused to testify that it was the fact.

It was specifically found by the court that the policy of insurance issued to the plaintiff was not canceled by the defendant in the manner stated in the notice and at the time alleged in the answer, and from this finding the finding is implied that the defendant had paid the premium at the times mentioned by him in his testimony. The testimony of the plaintiff, if believed by the court, as evidently it was, was sufficient to justify the specific finding that the policy was not canceled and the finding of payment of the premium necessarily implied therefrom. At any rate, said testimony is sufficient to support the findings of noncancellation of said policy and the payment of the premium thereon. Indeed, there is in the record no testimony worthy of being so characterized which is contradictory to the testimony of the plaintiff that he paid the premium in full to defendant's agent, De Force, before the receipt by plaintiff of the

notice from defendant of its purpose to cancel the policy if the premium were not paid as required by said notice.

[4] Counsel for the defendant contend, however, that, since it is within the rights of the defendant under the policy issued to the plaintiff arbitrarily or without stating any reason therefor to cancel the insurance policy before the end of the term for which it was issued, the effect of the above notice operated, *ipso facto,* to cancel and so invalidate the force of the policy. It is true that the policy issued by the defendant provides that either the insured or the insurer may at any time, without giving any specific or any reason therefor, cause the policy to be canceled. But the case here is not one in which the insurer, following the provision of the policy authorizing it to cancel the policy merely upon giving the insured five days' notice, has elected to cancel the policy arbitrarily or for unexplained reasons. And it is for this reason that the case of *Wing Chung Long* v. *Prussian Nat. Ins. Co.,* 33 Cal. App. 715 [166 Pac. 358], cited by the defendant as supporting its position with regard to the effect of the notice herein involved, is not in point. In that case, it appears from the opinion that two different written notices were served upon the insured at different times. The first, which was served in January, 1913, was precisely the same as the one here. The second was dated March 25, 1913, and was an unconditional notice of the cancellation of the policy. It was properly held in that case that the defendant under the terms of the policy had the right to elect arbitrarily to cancel the policy, notwithstanding that a notice had been previously served upon the insured declaring it to be the intention of the insurer to cancel the policy unless the insured paid the premium, as to which he was then in default, within five days from the date of such notice. In other words, it was held that the insurer could cancel the policy even though the premium had been paid and that there was no necessity under the terms of the policy for the insurer to state in the notice of cancellation, the grounds upon which, or the reasons for which, the policy was canceled and that the prior notice stating that it would be canceled in case the premium was not paid within a specified time was not to be considered as having any connection with the subsequent notice or as qualifying or limiting its effect. Thus it is readily to be perceived that there is a marked distinction between that

case and the one at bar. Here the notice did not operate, *ex propria vigore,* to cancel the policy, but, as above stated, amounted only to one of intention to cancel it. If, therefore, the plaintiff within five days from the date of the notice paid the premium to the defendant, the life of the policy would, of course, be perpetuated or retain its legal integrity to the end of its term, unless in the meantime it was canceled by either the insurer or the insured under the provision of the policy investing them with the mutual right of cancellation, exercisable arbitrarily. But it having been shown that the premium had been paid before the receipt by the plaintiff of said notice, it follows that the contingency (failure of plaintiff to pay the premium) upon the happening of which the force of the policy was, by virtue of the terms of said notice to terminate, did not happen and the policy, therefore, remained in full force and effect.

The next assignments of error involve rulings of the court disallowing answers to certain questions propounded to certain witnesses by counsel for the defendant. These assignments are numerous, but are of the same general nature, and may therefore be grouped and thus considered.

The theory upon which it was sought to bring the proposed but excluded testimony into the record was that the defendant's Lodi agent, De Force, transcended the scope of his authority as such agent by accepting, as in payment of the premium, or at least as in part payment thereof, the cancellation by plaintiff of a debt which he (De Force) owed the former for goods and merchandise. (See *Tomsecek* v. *Travelers' Ins. Co.,* 113 Wis. 114 [90 Am. St. Rep. 846, 57 L. R. A. 455, 88 N. W. 1013] ; *Briggs* v. *Collins,* 113 Ark. 190 [L. R. A. 1915A, 686, 167 S. W. 1114] ; *Sullivan* v. *Germania Life Ins. Co.,* 15 Mont. 522 [39 Pac. 742] ; *Folb* v. *Firemen's Ins. Co.,* 133 N. C. 179 [45 S. E. 547] ; *Texas Life Ins. Co.* v. *Davidge,* 51 Tex. 244; *Hoffman* v. *Hancock, Mutual Life Ins. Co.,* 92 U. S. 161 [23 L. Ed. 539, see, also, Rose's U. S. Notes] ; *Wiley B. Allen Co.* v. *Wood,* 32 Cal. App. 76, 82 [162 Pac. 121] ; *Stetson* v. *Briggs,* 114 Cal. 511, 514 [46 Pac. 603].)

After the stipulation of counsel for the defendant as to the truth of certain facts was made and the plaintiff had introduced in evidence, without objection, the policy and proof of loss, the latter admitted to be properly made, the

defendant, under section 2155 of the Code of Civil Procedure, called the plaintiff as a witness. As stated above, the plaintiff repeatedly, and with apparent emphasis, declared in the course of his examination by defendant's counsel that he paid the whole of the premium, a part thereof in cash and a part by means of a check. He was then asked by the defendant's attorney the direct question as to whether the premium was not paid partly in cash and partly by deducting a personal debt that De Force owed him, and the plaintiff answered that De Force had never at any time owed him any money or was indebted to him for any purpose. To contradict this testimony by the plaintiff the defendant called De Force to the witness-stand and, as above stated, undertook to show by him that the premium was paid partly by the plaintiff deducting therefrom the amount of a personal indebtedness of said De Force. De Force, as shown, did not seem to remember how or in what manner the premium was paid. Counsel then asked the witness a number of questions, for the purpose, as was stated at the time, of showing by what particular means the premium was paid and the business for which the building was used at the time the policy was issued and the fire occurred. As illustrative of the character of the questions asked for the purposes stated are the following: Plaintiff was asked by counsel for the defendant whether De Force was in the habit of buying liquor at his (plaintiff's) place and also if it was not true that he and De Force were on friendly terms at the time of the issuance of the policy and down to the time of the destruction of the premises by fire. Objections to these questions were sustained by the court. Also the following questions propounded to De Force: Whether he had not purchased liquors from the plaintiff for which he did not pay and the amount of which was deducted by the plaintiff from the total amount due for the premium; whether or not De Force was indebted to the plaintiff in the year 1921; whether the witness had paid plaintiff an indebtedness which he (De Force) admitted he owed him in April, 1921; as to the nature of the business in which the plaintiff was engaged in the year 1921. To all these questions objections were made upon the general grounds, and the objections sustained by the court. Counsel for the defendant also asked the witness some questions in the nature of an impeachment to

which the court sustained objections on the ground that it was an attempt by defendant to impeach his own witness. These rulings are also assigned as erroneous.

The questions by the defendant which the court refused to allow the plaintiff to answer called for testimony which could have reflected no substantial light upon the issue which was being tried. It was certainly immaterial whether the plaintiff and De Force were upon friendly terms, and the question propounded to the plaintiff as to the business he was engaged in at the time of the fire, while perhaps proper as a preliminary one, or one leading finally to a direct or categorical question as to the particular purpose for which the building was then being used, was so indefinite as to have justified the court in sustaining an objection thereto. The court suggested that counsel should go directly to the question of occupancy and not ask questions which appeared to be upon their face wholly immaterial. It is quite manifest that the plaintiff might have been engaged in a business other than the mercantile and restaurant business and still the building upon which the insurance was placed used for the purposes stated in the policy.

[5] There was no error in sustaining the objections to the questions put to De Force by counsel for the defendant which are above adverted to. It requires but slight scrutiny of the testimony given by said witness, if, indeed, it can properly be called testimony, to make it clear that he could not give a rational explanation of any of the details of the transaction upon which this action is founded. It was admitted by him, it will be recalled, that at the time of the issuance of the policy and at the times payments on the premium were made by the plaintiff, he was under the influence of liquor to an extent that rendered it impossible for him to state definitely how or in what manner or by what means the payments were made. He did say on one occasion, however, that he remembered receiving a check from plaintiff as in part payment of the premium, but that he had no recollection of receiving any cash payment, although he did not affirmatively say that he did not also receive cash as in part satisfaction of the premium. It is, therefore, quite plain that, even if the court had allowed the question propounded to him by counsel for the defendant as to the means by which the premium was paid, he

would not have been able to give any more satisfactory answer thereto than he had given to the questions calling for the same testimony previously propounded to him. Hence it cannot be held that the court's rulings upon those questions were erroneous. Indeed, the court could properly have excluded the answers to said questions that we are now considering on the ground that similar questions had previously been asked the witness, with the result as first above explained.

The disallowance by the court of the impeaching questions to De Force and other questions likewise propounded to the same witness in the nature of cross-examination did not involve error.

One of the questions asked of De Force by the attorney for the defendant, which was in the nature of cross-examination, and evidently for the purpose of laying the foundation for introducing proof in impeachment of his testimony in a certain particular, in case his answer should require impeaching proof, was whether he was intoxicated at the time he signed a certain affidavit to the effect that the premium was on the fifteenth day of April, 1921, paid to him in full as agent of the defendant by the plaintiff. The said affidavit was, without objection by the defendant, introduced in evidence by plaintiff's attorney during his cross-examination of De Force, who had stated, just previous to the introduction of the document, that he executed the same. [6] In sustaining the objection to the question as to whether De Force was in an intoxicated state when he signed said affidavit, the trial court properly held that the document involved incompetent testimony, at the same time stating that the affidavit would not have been allowed to go into the record if counsel for the defendant had objected to it and further correctly declaring the rule to be that, as to incompetent testimony to the admission of which no objection is made, cross-examination is not allowable.

Another question asked of De Force by defendant's counsel and similar in character to the above was whether the witness did not say, prior to his being called to the witness-stand, in the presence of one of the attorneys for the defendant and certain other named persons, that a portion of the premium was paid by the application thereto of a personal debt in a certain amount which the witness owed

the plaintiff. As already pointed out, the witness was not able, prior to the asking of said question, to give a rational account of the manner in which or the means by which the premium was paid. Indeed, nowhere in his testimony did he positively or affirmatively make any statement militating against the case of defendant, either as to the payment of the premium or the occupancy of the building. As must readily be inferred from what has been said above as to the general character of his testimony, it is manifest that all that can be said of such testimony, in so far as its effect upon the case of the defendant is concerned, is that it did not measure up to the expectations of the latter. In other words, De Force's testimony as to the payment of the premium was merely disappointing to the defendant in that he did not testify as favorably to it as it had wished or desired. Such disappointments, however, do not justify the cross-examination or the impeachment of one's own witness. [7] One may cross-examine his own witness for the purpose of laying the foundation for his impeachment and so impeach him, if he can, if he is taken by surprise by the testimony given by such witness. (Sec. 2049, Code Civ. Proc.) But the surprise which will open the way to such a course must be substantial. It must be founded on the fact that the witness has given testimony not only at variance with what the party producing him as a witness had good reason to believe, before calling him to the witness-stand and examining him, that it would be, but that such testimony is prejudicial or detrimental to the case of such party. The rule as thus stated is not only sound in principle but accords with the spirit as well as the letter of section 2049 of the Code of Civil Procedure and is sustained by the cases treating that subject. It has repeatedly been held that the mere failure of a witness to give favorable testimony for the party producing him does not entitle such party to prove that he has made contrary statements elsewhere, and when the testimony of such witness is of that character the party producing him is bound to accept the same as it is so given. (See *People* v. *Creeks,* 141 Cal. 532 [75 Pac. 101]; *People* v. *Cook,* 148 Cal. 334, 345 [83 Pac. 43]; *Zipperlen* v. *Southern Pac. Co.,* 7 Cal. App. 206, 214–217 [93 Pac. 1049]; *People* v. *Spencer,* 58 Cal. App. 197 [208 Pac. 380].)

There are other rulings than the above to which counsel object, but they involve the disposition of questions similar to those above considered and they need, therefore, not be given special notice herein.

It is lastly contended that there is no evidence supporting the finding that the building was occupied for mercantile and restaurant purposes at the time of the fire. The finding as to occupancy is in the language of the third paragraph of the complaint and sufficiently shows, as we hold is true of the complaint, that the building was occupied for the purposes stated in the policy at all times from the date of the issuance of the policy to and including the time that the building and contents were destroyed by fire on July 2, 1921. **[8]** As to the contention, however, that there is no evidence to support this finding, it is first to be remarked that that point is not subject to review upon the record before us because the bill of exceptions contains no specification of the insufficiency of the evidence to support it. (Sec. 648, Code Civ. Proc.; *Millar* v. *Millar,* 175 Cal. 797, 799 [Ann. Cas. 1918E, 184, L. R. A. 1918B, 415, 167 Pac. 394], and cases therein cited; *Smith* v. *Meade,* 36 Cal. App. 173 [171 Pac. 815] ; *In the Matter of Baker,* 153 Cal. 537, 542 [96 Pac. 12].) But a conclusive reply to the point is that the stipulation whereby counsel for the defendant admitted the existence of certain material facts involved, as we have above pointed out, the admission of all the essential and material facts in this case, except the issue as to the payment of the premium or cancellation of the policy, and, therefore, if it be true that the finding as to occupancy is in any respect insufficient or not supported by positive testimony said stipulation supplies such deficiency. Indeed, in view of the stipulation referred to, there was no necessity for a finding upon the question of occupancy, since it is well settled that no finding of essential facts the truth of which is admitted is necessary or required.

The judgment is affirmed.

Finch, P. J., and Burnett, J., concurred.

The foregoing opinion was modified by the district court of appeal on June 20, 1923, as follows:

HART, J.—The following language contained in the opinion in the above-entitled case will be stricken therefrom:

"It will be readily perceived that the above notice is not a notice of cancellation. It was merely a notice of intention to cancel the policy unless within a designated time the premium is paid. It did not operate *ipso facto* to cancel the policy, but merely notified the defendant that unless he complied with the condition therein stated within the time specified in the notice the policy would be canceled."

In lieu of said language the following will be inserted in the opinion:

"It will be perceived that the above notice was a conditional notice of cancellation. It notified the defendant that unless he complied with the condition therein stated within the time specified in the notice the policy would stand canceled. If in such case the insured defaults in the payment of the premium within the time specified, then, upon the expiration of said time, the notice operates, *ipso facto et eo instanti,* to cancel the policy. In other words, in such case, the insured having failed to pay the premium within the prescribed time, the notice then operates to cancel the policy and no other or further notice or other action by the insurer is necessary to effect a cancellation of the policy. If, on the other hand, the premium be paid by the insured within the time specified in the notice, then the notice is of no further force and effect and the policy will remain a valid contract between the insurer and the insured."

The following language will also be stricken from the opinion:

"Thus it is readily to be perceived that there is a marked distinction between that case and the one at bar. Here the notice did not operate, *ex propria vigore,* to cancel the policy, but, as above stated, amounted only to one of intention to cancel it."

In lieu of this language the following will be inserted in the opinion:

"There is, obviously, a marked distinction between that case and the one at bar."

[9] It should be explained that the above modification is made because of a suggestion to the writer of the opinion, after its publication in the California Appellate Decisions, that the language stricken from the opinion seemed to imply

that, in the event that the insured failed to pay the premium within the time specified in the notice, the said notice would not then operate, *ipso facto,* to cancel the policy. We did not intend by the use of the language hereby expunged from the opinion so to declare. We never for a moment supposed that the notice, upon default by the insured in the payment of the premium within the time designated therein, would not stand as an absolute cancellation of the policy. Counsel for the appellant in their briefs seemed to hold to the view that, even though the premium were paid within the prescribed time, the insured could, nevertheless, treat the notice as one of unconditional cancellation, to take effect upon the expiration of the five days within which the premium was required to be paid, or as amounting, in effect, to the cancellation which either the insurer or insured was at liberty to effect under the provision of the policy giving the parties to the contract of insurance the mutual right to cancel or surrender the policy arbitrarily or without stating any reason therefor. This contention we had in mind when we used the language stricken out. We merely attempted to say that a notice specifically stating a condition upon which alone the policy would be canceled would not have that effect unless the condition were not complied with by the insured within the time fixed by the notice for its performance. But we can see the force of the criticism that the language hereby stricken from the opinion might justify the implication that, if the premium was not paid within the prescribed time, a cancellation of the policy would not then be effected, but that there would be required further notice to that effect. Clearly, the said language so construed would not correctly state the rule as to that matter; and, to make our position clearer upon the proposition, we are glad of the opportunity to make the above modification.

Burnett, J., and Finch, P. J., concurred.