[No. 22118. Department One. December 23, 1929.]

MARIE JOHNSON, *Respondent*, v. INLAND EMPIRE FARMERS' MUTUAL FIRE INSURANCE COMPANY, *Appellant.*[1]

*Lund & Dodds*, for appellant.

*S. Edelstein*, for respondent.

*George Donworth* (*Donworth, Todd & Holman*, of counsel), *amicus curiae*.

TOLMAN, J.—This is an action to recover for loss under a fire insurance policy, tried to the court sitting

[1]Reported in 283 Pac. 177.

without a jury. The plaintiff had a judgment as demanded, and the defendant has appealed.

The facts were stipulated in the trial court, and the findings based thereon are not questioned.

In order to grasp the questions of law here presented, but a brief statement of facts is required.

It appears that appellant, a mutual fire insurance company, for a valuable consideration, on September 2, 1925, issued to one Carl Johnson a policy insuring against loss by fire, for a term of three years, a certain two-story frame dwelling "while occupied by the assured or a reliable tenant as a dwelling house." At the time the policy was issued, Carl Johnson, the assured named in the policy, and respondent Marie Johnson, were husband and wife, then residing in the insured dwelling, and the property, including the dwelling, was the community property of the husband and wife, and known to the appellant to be such.

Thereafter respondent apparently left the place with no intention of ever returning, and in June, 1927, she brought suit for divorce. As a result of that action, on July 20, 1927, a property settlement was entered into between Carl Johnson and the respondent, and, as a part thereof, Carl Johnson conveyed all of his interest in the real estate, of which the insured dwelling was a part, to the respondent. The property settlement was confirmed by the interlocutory decree entered in the divorce action on October 3, 1927, and the insured property then became, and has since remained, the separate property of the respondent. By the terms of the property settlement, Carl Johnson was given the right to continue to occupy the insured dwelling until January 1, 1928, and he so occupied it until about that time, when he removed therefrom, taking all of his personal property from the dwelling with him, with no intention of ever returning. There remained

in the dwelling a substantial quantity of household goods, personal effects, kitchen utensils, and other personal property belonging to the respondent, but the dwelling was not otherwise occupied up to the time of the fire, which occurred on March 1, 1928.

The policy recites:

"WHEREAS, Carl Johnson has become a member of The Inland Empire Farmers' Mutual Fire Insurance Company and bound himself to pay his ratable proportion of all assessments made in accordance with the constitution and by-laws, and to abide by the constitution and by-laws in all respects, in consideration of which, and the stipulation herein named," the insurance was issued.

The by-laws thus made a part of the policy provide, among other things:

"This company will not insure vacant buildings and will not be liable for, nor pay, any loss on any building which has been vacant for more than thirty days previous to the occurrence of the loss."
And on the face of the policy appears:
". . . This insurance may be canceled by the insured, or by this company, according to the by-laws on its policy.
"*Additional fire insurance without the written consent of the secretary of this company, makes this insurance void.*
"*Any change of title or ownership of this property renders this policy of insurance void until consented to, in writing, by the secretary.*"

■ The first question presented is based upon the contention that, by reason of the lack of occupancy, the policy had become void before the loss occurred.

There seems to be no doubt under the authorities that "occupied" means that the building must be used for human habitation, not necessarily continuously, but as a customary or usual place of abode.

"Whether a dwelling house is occupied or vacant

must depend upon the facts of each particular case; and the decisions 'are not always in harmony where the facts are substantially the same.' In general a dwelling house is occupied when human beings habitually live in it as a place of abode. When it ceases to be used for living purposes or as a customary place of human habitation it is unoccupied. It is not necessary that some person shall live in the house continuously, but it must be a usual place of abode, and there must not be a cessation of occupancy for any considerable length of time." 26 C. J. 213.

The building not having been so occupied when the loss occurred, if we must accept as controlling the words of the policy, "while occupied by the assured or a reliable tenant as a dwelling house," without reference to other provisions, then it would seem to follow that the policy was not in force at the time of the fire.

But the policy must be construed as a whole, and after the words as to occupancy, which have been quoted, the policy provides how it may be canceled and what will render it void (cessation of occupancy not being named as a voiding cause); and, also, that the company will not insure, will not be liable for, and will not pay any loss on a building which has been vacant for more than thirty days. Appellant contends that "vacant" and "unoccupied" are interchangeable terms and mean the same thing. There may be situations where that is true, and respectable courts have so held. *Home Insurance Co. v. Boyd,* 19 Ind. App. 173, 49 N. E. 285.

But, under such a policy and such conditions as we have here, the great weight of authority is to the contrary. *Norman v. Missouri Town Mutual Fire, etc. Co.,* 74 Mo. App. 456; 26 C. J. 212; Cooley's Briefs on Insurance, 2574.

Therefore we must hold that, while the dwelling

here in question was unoccupied at the time of the fire, it was not vacant.

That brings us to the vital question of whether the words "while occupied," etc., were a continuing warranty or merely descriptive. Having taken pains to provide what shall void the policy, and having omitted to include a simple word or two, which would put the matter beyond question, does it follow, even under the well established rule of construction, which must be here applied, that the words "while occupied," etc., can be regarded as descriptive only? Many authorities are cited upon this question. There is no doubt the use of the term, "occupied as a dwelling," or similar words, have been generally held to be descriptive only, or, at most, only a representation of the use to which the property was devoted at the time the policy issued. May on Insurance, § 247; Cooley's Briefs on Insurance, pp. 252 and 253; *Imperial Fire Insurance Co. v. Kiernan,* 83 Ky. 468; *Pabst Brewing Co. v. Union Insurance Co.,* 63 Mo. App. 663; *United States Fire and Marine Insurance Co. of Baltimore v. Kimberly,* 34 Md. 224; *Heffron v. Kittanning Insurance Co.,* 132 Pa. St. 580, 20 Atl. 698; *Joyce v. Maine Insurance Co.,* 45 Me. 168; *Woodruff v. Imperial Fire Insurance Co.,* 83 N. Y. 133; *Bryan v. Peabody Insurance Co.,* 8 W. Va. 605; Joyce on Insurance, § 2103.

But these authorities do not meet the present situation. We cannot disregard the word "while" as used in the policy. There are but comparatively few cases cited by either side where this term is used.

In *Burlington Insurance Co. v. Brockway,* 138 Ill. 644, 28 N. E. 799, the language used was "while occupied by assured as a store and dwelling house," etc. Some weeks before the fire, the assured ceased to occupy the building as a dwelling place, but continued to occupy it as a store. The court used broad language

in arriving at its decision that nothing short of allowing the building to become wholly unoccupied would void the policy, but that language must be construed with reference to the question which was decided.

In *Southern National Insurance Co. v. Cobb,* 180 S. W. (Tex. Civ. App.) 155, the language used was, "while occupied as *The Park Terrace Sanitarium,*" etc. The building ceased to be used as a sanitarium, but continued to be occupied by a caretaker. The court there held, in effect, that, as the building continued to be occupied, the mere cessation of the operation of the sanitarium would not void the policy, though again broad language was used.

In *Allen v. Home Insurance Co. of New York,* 133 Cal. 29, 65 Pac. 138, the policy again used the words, "while occupied as a dwelling house," but there was evidence tending to show that, at the time the policy was issued and at all times afterwards until the loss occurred, the building was not used as a dwelling, but as a disreputable resort. Again broad language was used, and a judgment against the insurer was reversed, as we read the opinion, because the trial court instructed the jury that, "the use of the house for purposes other than a dwelling house would not forfeit the policy unless the plaintiff (the insured) had knowledge of such use.

In *Arnold v. American Insurance Co.,* 148 Cal. 660, 84 Pac. 182, the policy contained the words, "while occupied as a dwelling house," and, because the complaint failed to allege that at the time of the loss the property was so occupied, it was held to be demurrable. This decision was based largely upon *Allen v. Home Insurance Co. of New York, supra.* Other California cases to the same effect are *Agalianos v. American Cent. Insurance Co.,* 62 Cal. App. 349, 217 Pac. 107; *Slinkard v. Manchester Fire Assurance Co.,* 122 Cal.

595, 55 Pac. 417; and *Mawhinney v. Southern Insurance Co.*, 98 Cal. 184, 32 Pac. 945.

The case of *Minneapolis Threshing Machine Co. v. Firemen's Insurance Co.*, 57 Minn. 35, 58 N. W. 819, 23 L. R. A. 576, involves personal property insured, "while not in use," which language was there held to govern.

*Keys v. Northwestern National Insurance Co.*, 16 Fed. (2d) 798, is a decision by the district court, the policies containing the language, "while occupied only for dwelling house purposes." It appears that the insured occupied the house as a dwelling for a time, then leased it to another, who in turn made a sub-lease of it to a tenant who was occupying it at the time of loss as a hotel or boarding house, and the insured knew of this use. Under a provision in the policy against any use which would increase the hazard, the court there held recovery could not be had.

Many other cases cited have been carefully examined, but, as we construe them, they are not sufficiently in point to warrant further mention.

After a study of all of the authority available, we are left without any clear guide as to what should be the correct answer to the controlling question here.

The word "while" must have been used for a purpose other than to indicate the use to which the building was put at the time the policy issued. If that were all that was intended, the word might, and should, have been omitted. True, its significance might have been increased by the use of the word "only" immediately preceding it, but without the word "only," it still indicates the same thing. The whole phrase, "while occupied by the assured or a reliable tenant," indicates rather clearly that it is meant to apply to the whole term covered by the policy. That the insurance, continuing while a certain condition exists, may become

void for other reasons stated in the policy, is not at all inconsistent with the continuing condition, and, having covenanted that the condition shall continue as a condition precedent to the insurance, it is not necessary to provide in terms that when the condition ceases the insurance shall also cease.

It seems to be argued that the provision of the by-laws which permits a vacancy of not exceeding thirty days is inconsistent with this view. Had the loss occurred within the thirty-day period, that might be an argument in support of the theory that, as to the thirty-day period, "vacant" and "unoccupied" are interchangeable terms, but here the unoccupied condition continued for some sixty days. We do not now consider it necessary to determine what the liability would have been if the loss had occurred within the thirty-day period.

Much as we should like to affirm the judgment, we feel that we cannot do so without reading out of the policy one of the conditions which is therein clearly expressed.

Since our views upon the question already discussed call for a final disposition of the action, it is unnecessary to consider the second question raised as to whether or no the conveyance by the husband to the wife caused a change of title or ownership such as would void the policy under its terms.

The judgment appealed from is reversed with directions to dismiss the action.

MITCHELL, C. J., PARKER, BEALS, and MILLARD, JJ., concur.