COMMERCIAL STANDARD INS. CO. v.
BACON et al.

No. 3241.

Circuit Court of Appeals, Tenth Circuit.

March 15, 1946.

Duke Duvall, of Oklahoma City, Okl. (Dudley, Duvall & Dudley, of Oklahoma City, Okl., on the brief), for appellant.

Wm. R. Herring, of Oklahoma City, Okl., and Sam L. Wilhite, of Anadarko, Okl., for appellees.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action for a declaratory judgment by the appellant insurance company, herein referred to as the Company, to determine its liability under two automobile liability insurance policies issued to appellee, A. F. Wass, in connection with his operations as a Class B Motor Carrier, under permit from the Oklahoma Corporation Commission.

The case was tried on a stipulation of facts substantially as follows: Wass, the owner of a Chevrolet tractor and semi-trailer tank, made application for a certificate of convenience to operate the tractor and semi-trailer tank for the purpose of transporting petroleum products. A statutory insurance policy in the amount of $5,000 was issued to him by the Company and filed with the Corporation Commission to enable him to procure the permit. Wass desired additional coverage in the sum of $25,000. Accordingly, a duplicate of the $5,000 statutory policy was issued and delivered to him, differing from the $5,000 policy only in that it had an endorsement in red ink across its face to the effect that it should be void if filed with the Corporation Commission. Each policy specifically excepted from its coverage "liability for loss or expense resulting from fire or explosion occurring within the contents of any vehicle (whether such contents be loaded or unloaded) or from leakage of such contents * * *." Each policy carried the standard "Form E" endorsement prescribed by the Corporation Commission.[1]

The tank on the rear of the semi-trailer had an outlet valve through which the contents of the tank were withdrawn. A leak developed near the outlet valve where the tank emptied. The tractor and semi-trailer tank were driven to Anderson-Prichard Company in Cyril, Oklahoma, where the tank was emptied and steamed for four or five hours for the purpose of cleaning it and preparing it for the welding operation

---

[1] The pertinent portion of Form E is as follows:

The policy to which this endorsement is attached is written under and pursuant to the provisions of the laws of the State of Oklahoma requiring the same and it is to be construed in accordance therewith and the rules and regulations of the Corporation Commission of Oklahoma and implies an acceptance of such rules and regulations, and is payable to the State of Oklahoma for the benefit of all persons who may suffer personal injuries * * * due to any negligence of the assured, his/its agents, employees, or representatives in the operation or use of any motor vehicle under any permit or certificate of public convenience and necessity granted by or coming within the jurisdiction of the Corporation Commission of the State of Oklahoma.

In consideration of the premium stipulated in the policy to which this endorsement is attached the insurer * * * agrees to pay any final judgment rendered against the insured for personal injuries, including death, or damage to property of others, (excluding injury to or death of the insured's employees while engaged in the course of their employment * * * due to the negligence of said assured, his/its agents, or employees, or representatives, in the operation or use of any motor vehicle, * * * operated by the assured, his/its agents or employees within the limits of the schedule hereinafter set out, * * * nothing contained in the policy or any endorsement thereon, * * * shall relieve the insurer from any liability hereunder or from the payment of any such judgment.

No condition, provision, stipulation or limitation contained in the policy or any other endorsement thereon, or the violation of any of the same by the insured shall affect in any way the right of any person * * * injured in his person by the negligence of the insured * * * or relieve the company from the liability provided for in this endorsement. * * *

Schedule—On any motor vehicle operated or used for the transportation of freight or express, or both, the insurer shall be liable to each person * * * suffering damages as the result of any accident due to the negligence of the assured, his/its agents, employees or representatives in the use or operation of such motor vehicle to the extent of damages sustained, not exceeding five thousand ($5,000.00) dollars. * * *

necessary to effect the repair. It was thereafter driven to the shop of the Pioneer Equipment Company, about a block away, for the purpose of making the necessary repair. While located in the shop and while Don Bacon, an employee of the Pioneer Equipment Company, was engaged in the welding operation on the valve, an explosion occured within the tank which caused Bacon's death.

Liability for the loss resulting in Bacon's death was asserted against Wass and the question in this case is whether the Company is liable for such loss under the two policies in question.

The pleadings presented three issues for determination: (1) Was the Company liable for the loss under the policy filed with the Corporation Commission? (2) Was the Company liable under the additional policy for $25,000? (3) If the Company was liable under these policies, was it entitled to reimbursement from Wass for any amount it was required to pay to discharge its liability? The court entered judgment, holding the Company liable on both the statutory policy filed with the Corporation Commission and the additional policy of $25,000 which was not filed with the Commission. The court refused, to pass on the question of reimbursement between the Company and Wass on the theory that that question did not present a justiciable controversy.

We consider first the rights and liabilities of the parties under the policy of $5,000 filed with the Corporation Commission. The Oklahoma Statutes make it unlawful for a Class B Motor Carrier to operate any vehicle upon any public highway for the transportation of passengers or property without first obtaining a permit from the Corporation Commission.[2] Before such a permit will be issued, an applicant is required to file a liability insurance policy covering public liability and property damage, in such sum as shall be fixed by the Corporation Commission. The statute provides that such policy shall bind the obligor to make compensation for injuries or death to persons and loss or damage to property resulting from the operation of such motor carrier for which he is liable.[3] Form E is a rider required to be attached to every such policy. It was formulated and adopted by the Corporation Commission to effectuate the provisions of the Act requiring the filing of a liability bond.

The Company contends that it is liable only for loss resulting from the operation of the vehicle, and that the court erred in holding it liable for loss also resulting from the use of the vehicle. It is true that the statute uses only the phrase "loss * * * resulting from the operation." Form E, however, requires indemnity not only for loss resulting from the operation, but also for loss resulting from the use of any motor vehicle. In Continental Casualty Co. v. Shankel, 10 Cir., 88 F.2d 819, 822, we said: "Form E was adopted as a regulation by the Corporation Commission to effectuate the provisions of section 3697. It has been in continuous use since its adoption. The statutory provision has been amended twice, yet the Legislature has not seen fit to disapprove or restrict the provisions of Form E. This is persuasive evidence that the Legislature approved the regulation and the administrative construction of the statute manifested therein." The court correctly construed the coverage to include the use of the vehicle as well as the operation therof.

A much more serious question is whether the loss was within the coverage of the policy. The policy in question is what is commonly referred to as a statutory policy. It is required by statute. The liability to be covered thereby is fixed by statute, and the appropriate regulations of the Corporation Commission promulgated thereunder. The parties to the policy may not by their contract decrease or diminish the statutory liability. In order, therefore, to determine the extent of coverage, we must look to the statute and the appropriate regulations of the Corporation Commission.

The authority of the State to regulate the operation of motor carriers arises under the broad police powers of the State, under which it has control and supervision over the public highways of the State, and has power to make all reasonable rules, regulations and requirements for the safety and protection of the public in the use thereof. The broad general scope of the Act is to regulate the operations of motor carriers upon the highways. It specifically requires a permit as a prerequisite to the right to use the highways. The permit defines the business which can be carried on over the highways; the route over which the permittee may travel; the kind and size of vehicles, and other matters, all con-

---

[2] See 47 O.S.A. § 167.

[3] See 47 O.S.A. § 169.

nected with the use of the highways. The general subject of the legislation is the right to use the highways in carrying on the licensed business. Requiring an indemnity bond covering losses resulting from the operation or use of the vehicle contemplates losses resulting from the operation or use of the vehicle upon the highway, or stated otherwise, loss resulting while the highways are being used by the vehicle. This is the interpretation which has been placed upon the Act by the Supreme Court of Oklahoma, as well as by ourselves.

In Commercial Standard Ins. Co. v. Garrett, 10 Cir., 70 F.2d 969, 976, we construed the purpose of the statute to be as follows: "Their purpose was to make certain that motor carriers operating on the public highways of Oklahoma should at no time be without insurance for the protection of the public." In United States Fidelity & Guaranty Co. v. Hubatka, 172 Okl. 117, 44 P.2d 66, 72, the Oklahoma Supreme Court said: "It appears to us to be the intent of the Legislature of this state to require carriers to procure public liability insurance so as to protect the public from any and all damages resulting from the negligence of said carrier, his servants, agent, and representatives, in the performances of such duties." In Utilities Ins. Co. v. Potter, 188 Okl. 145, 105 P.2d 259, 154 A.L.R. 512, the Supreme Court of Oklahoma quotes with approval from Hendrick v. State of Maryland, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385, those portions of the opinion which discuss the right of the state to prescribe uniform regulations in respect to the operation upon its highways and the power of the State to require insurance policies to protect the public from injuries from the negligent operation of its carriers. It also quotes with approval from South Carolina State Highway Department v. Barnwell Bros., 303 U.S. 177, 625, 58 S.Ct. 510, 82 L.Ed. 734, those statements conceding the right of the State to prescribe regulations adapted to promote the safety upon its highways, and then construes the purpose of the statute to be to require the bond as a protection of the passengers and members of the public who may be injured negligently by the bus operators. The court states that the intent of the law is to put financial responsibility behind the operation of a motor transportation company as a protection to the public.

 We accordingly conclude that to be within the coverage of the policy the loss must result from an operation or use of the licensed vehicle upon the highway. It is not necessary, however, that the vehicle must be in actual operation or use upon the highway at the time the loss occurs in order to constitute an operation or use of the highway. It is sufficient if the operation or use of the vehicle from which the loss occurs has a proximate and necessary connection with an actual operation or use of the vehicle upon the highway. Thus, it has been held that the operation of cars upon the highway includes not only cars in motion, but also those which in the course of operation were parked or left standing upon the highway; that it included ordinary stops upon the highway as being incidental to the operation; that it included a vehicle while it is stopped in soliciting trade or delivering merchandise.[4] On the other hand, it has been held that one who was merely holding an automobile on a hill on a public highway was not guilty of operating an automobile upon the highways while intoxicated.[5]

In Ehlers v. Gold, 169 Wis. 494, 173 N. W. 325, it was held that an automobile was being operated in the service of a common carrier after it had left the route but while it was being driven along the streets to a shop for repair. It is to be noted, however, that the coverage there required only that the vehicle he operated in the service of the common carrier. Mawhinney v. Southern Ins. Co., 98 Cal. 184, 32 P. 945, 20 L. R.A. 87, was concerned with an insurance policy on a harvester. The policy covered loss from fire resulting while the machine was operating in the field or while in transit from place to place in connection with harvesting. Prior to the opening of the harvesting season the machine was taken to a shop to condition it for the coming harvest, and while there, was destroyed by fire. Under a similar contention, the court held that the machine was not operating in the grain fields nor was it being transported from place to place in connection with such operation.

---

[4] Scheppmann v. Swennes, 172 Minn. 493, 215 N.W. 861; Hand v. Frazer, 139 Misc. 446, 248 N.Y.S. 557; Cook v. Crowell, 273 Mass. 356, 173 N.E. 587.

[5] State v. Hatcher, 210 N.C. 55, 185 S. E. 435.

■ We know of no case which has gone so far as to hold that work on a parked motor vehicle in a garage had such a proximate connection with the operation or use of the vehicle upon the highway as to constitute an operation or use thereof upon the highway. It is not sufficient to establish liability to find that the repair was a necessary incident in the preparation of the truck for use upon the highway in the operator's authorized business. Before there can be any liability under the policy, the repair must be a necessary incident in the course of an operation or use of the truck upon the highway. American Automobile Ins. Co. v. Taylor, D.C., 52 F.Supp. 601, and Christian v. Royal Ins. Co., Ltd., 185 Minn. 180, 240 N.W. 365, upon which the trial court largely relied, are distinguishable upon the facts. In the Christian case, Christian, through his employee, was delivering, by use of his truck, a tractor which he had sold to one Hand. He had instructed his employee to bring back a used tractor which had been taken in on the purchase price. After the used tractor had been loaded on the truck, the truck became mired down and the accident occurred while the new tractor, which had been hooked on to the truck, was attempting to extricate it. The only question involved was whether the truck was being operated by Christian at the time the loss occurred, and the court quite correctly held that it was. In the Taylor case, a car had been driven to a battery service station for the purpose of removing a rental battery and installing the owner's battery, which had been recharged. After the owner's battery had been replaced in the car, the serviceman asked the son of the owner, who had been forbidden to drive the car, to step on the starter to see if the connections functioned properly. When the son did this, an accident occurred. The court held the insurance company liable, but not on the theory that the car was being used by the owner while the serviceman had it in the shop for service, but on the ground that the son's act of starting the car was on operation for the use and benefit of the owner and thus constituted a use of the car by him. The opinion clearly indicates that if the car had been started by the serviceman it would not have constituted an operation or use by the owner, because the serviceman was an independent contractor.

■■ Under the well recognized principle that insurance policies will be construed most strongly against the company, we should adopt a liberal construction in favor of coverage. But that does not warrant or justify us in giving words a strained or unnatural meaning in order to find coverage. It would, in our opinion, be adopting a strained and unwarranted construction of the intent of the Legislature to hold that when it required, as a prerequisite to the right to use the highway, the filing of an indemnity bond requiring the payment of losses resulting from the operation of the motor vehicle for which the owner might become liable, that the Legislature had in mind losses which might accrue while the vehicle was parked in a garage for repairs to fit it to be used upon the highways in pursuit of the business authorized by the permit. It would, in our opinion, also be giving to the words "operate or use" an unwarranted construction to hold that such a repair being carried on away from the highway by an independent contractor constituted an operation or use of the vehicle upon the highway by the permittee under the permit.

■ There is another reason why the decision of the trial court cannot stand. To establish liability under the policy, it is not only necessary that the vehicle be operated or used upon the highway at the time the loss occurs, but such operation or use must be by the permittee, either by himself or by his agent or representative. The statute requires that the policy must indemnify for such loss resulting from the operation of the vehicle for which the *carrier is liable.*[6] The regulation requires indemnity for loss due to *any negligence of the assured, his agents, employees or representatives,* in the operation of the vehicle. This was the coverage provided by the policy. The operation under which the liability is sought to be imposed upon the Company was the act of repairing the outlet valve on the tank by Bacon. But Bacon was the employee of the proprietor of the garage. The proprietor was an independent contractor. Neither Bacon nor the proprietor was subject to the directions or control of the permittee. Assuming that the repair constituted an operation or use of the vehicle, it was conducted by an independent contractor and was therefore neither the act of the permittee, his agent or

---

[6] Emphasis supplied.

employee, and there could be no liability against the permittee by virtue of that operation.

We conclude that the insured vehicle was not being operated or used upon the highway nor was it being operated or used by the permittee, either in person or by his agent or representatives. It follows that there was no liability against the Company on the statutory policy of $5,000.

The conclusion we have reached on the statutory policy of $5,000 makes it unnecessary to resolve the issues raised as to the $25,000 policy, because if it is held to be a statutory policy the same result follows, and if it is determined that it is a private contract of insurance, then there is no liability by virtue of the exclusion clause, which excludes from coverage "liability for loss or expense resulting from fire or explosion occurring within the contents of any vehicle (whether such contents be loaded or unloaded) or from leakage of such contents, except contents of the ordinary fuel tank containing fuel for the propulsion of the described automobile only." Neither is it necessary to resolve the third assignment of error relating to the right of reimbursement.

The judgment of the trial court is reversed and the cause is remanded, with directions to proceed in comformity with the views expressed herein.